PEOPLE *v.* HAMPTON

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—PRIOR DECISION—RETROACTIVELY APPLIED DECISION—PROSPECTIVELY APPLIED DECISION.

The Michigan Supreme Court is under no constitutional compulsion to apply the rule in a previous decision by that Court either prospectively or retrospectively.

2. COURTS—DECISIONS—RETROACTIVELY APPLIED LAW—PROSPECTIVELY APPLIED LAW.

Key factors which the United States Supreme Court has taken into' account in determining whether a new rule of law should

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5, 9–12] 5 Am Jur 2d, Appeal and Error § 729.
  20 Am Jur 2d, Courts §§ 233–236.
[1, 2, 12] Prospective or retroactive operation of overruling decision. 10 ALR3d 1371.
  Right of court in overruling precedent to apply new rule prospectively and adhere to old one as regards past transactions. 85 ALR 262.
[3, 5, 9–11, 13] 21 Am Jur 2d, Criminal Law §§ 45, 55–61.
  53 Am Jur, Trial §§ 661–665.
  Instructions in criminal case in which defendant pleads insanity as to his hospital confinement in the event of acquittal. 11 ALR3d 737.
  Prejudicial effect of statement of instruction of court as to possibility of parole or pardon. 12 ALR3d 832.
[6, 7] 53 Am Jur, Trial §§ 510, 511, 637, 844.
[8] 21 Am Jur 2d, Criminal Law §§ 512–519.

be applied retroactively or prospectively are: (1) the purpose of the new rule, (2) the general reliance on the old rule, and (3) the effect on the administration of justice.

3. CRIMINAL LAW—INSANITY DEFENSE—INSTRUCTIONS.

An instruction to the jury that if defendant was found not guilty by reason of insanity, he would not thereby be released, but rather committed to a suitable institution for treatment has the primary purpose to insure that a defendant will not be found guilty because the jury fears that he will be set free if an insanity verdict is returned.

4. COURTS—DECISIONS—FIRST IMPRESSION—RETROACTIVELY APPLIED DECISION—CASES AFFECTED.

A decision of the Michigan Supreme Court, which was a matter of first impression, did not overrule an earlier rule which trial judges had relied on for many years and the impact of retroactivity of that decision would affect a small number of cases in which a serious risk exists that the issue of guilt or innocence may not have been reliably determined.

5. CRIMINAL LAW—INSANITY DEFENSE—INSTRUCTIONS—RETROACTIVITY.

The rule laid down in a previous decision of the Michigan Supreme Court which requires that a jury be instructed that if a defendant was found not guilty by reason of insanity, he would not thereby be released but rather committed to a suitable institution for treatment, properly applies to all cases where: (1) it is determined from the proofs that the issue is submissible to the jury, (2) that the defendant or a member of the jury requested such an instruction as to the disposition of the defendant if he were found not guilty by reason of insanity, (3) the trial court thereafter refused to so instruct, and (4) the issue was properly preserved for appeal.

6. TRIAL—INSTRUCTIONS—ARGUMENTS OF COUNSEL.

There is a great deal of distinction between the formal instructions given to a jury by a trial judge and the assertions to a jury by counsel, as counsel are advocates and their views, although affirmatively stated, are not binding on the jurors.

7. TRIAL—INSTRUCTIONS—PURPOSES—ADVOCACY.

One of the prime purposes of the court's instructions to the jury is to definitively inform the jurors of the applicable law and to separate the law from advocacy.

DISSENTING OPINION

BLACK, J.

8. CRIMINAL LAW—FELONY PROSECUTION—CONCLUSION OF PROSECUTION.

*A felony prosecution in Michigan is never over, or concluded legally, until the defendant is either acquitted or dead, or released* nolle *on joint motion of a discouraged prosecutor and a toilworn trial judge.*

9. HOMICIDE—ASSAULT WITH INTENT TO MURDER—INSANITY DEFENSE —INSTRUCTIONS.

*Trial judge would have erred grossly had he instructed the jury at a trial in 1966 that, when a person accused of any felony shall have been acquitted on trial upon the ground of insanity, the court shall ascertain the issue of insanity and, if such person is found insane, the court shall order that he be turned over to the sheriff for safe custody and removal to the Ionia State Hospital, to which hospital such person shall be committed to remain until restored to sanity.*

10. HOMICIDE—ASSAULT WITH INTENT TO MURDER—INSANITY DEFENSE—INSTRUCTIONS.

*Instruction upon the point of acquittal by reason of insanity, if any was to be given at all at defendant's trial in 1966 for assault with intent to murder, should have been delivered pursuant to a statute which then provided that any person, who is tried for the crime of murder and is acquitted by the court or jury by reason of insanity shall forthwith be committed by order of said court to a state hospital for the criminally insane for the remainder of his natural life and that the governor may, however, discharge such person upon recommendation of the commission, based upon an investigation by it and its determination that such discharge will not be harmful to other persons or their property (CL1948, § 766.15c, MCLA § 750.83).*

11. HOMICIDE—INSANITY DEFENSE—PROSPECTIVELY APPLIED DECISION —INSTRUCTIONS.

*Trial court's judgment convicting defendant of assault with intent to murder should be affirmed as errorless where it was entered in 1966, long before a decision of the Michigan Supreme Court for declared prospective effect which requires that a jury be instructed that if a defendant was found not guilty by reason of insanity, he would not thereby be released but rather committed to a suitable institution for treatment where*

the defense of insanity is present, is made submissible by the proofs, and this instruction is timely requested by the defendant or upon request of the jury.

OPINION FOR REVERSAL

T. E. BRENNAN, J.

12. COURTS—PROSPECTIVE OVERRULEMENT—PRECEDENTS.

Prospective overrulement is nothing more than an unkeepable judicial promise to apply overruled precedents to certain future cases.

13. CRIMINAL LAW—INSANITY DEFENSE—INSTRUCTIONS.

The rule applied in a previous decision of the Michigan Supreme Court which requires that a jury be instructed that if a defendant was found not guilty by reason of insanity, he would not thereby be released, but rather committed to a suitable institution for treatment is a mistake.

Appeal from Court of Appeals, Division 2, J. H. Gillis, P. J., and Levin and Bronson, JJ., reversing and remanding Genesee, Donn D. Parker, J. Submitted January 8, 1971. (No. 18 January Term 1971, Docket No. 52,836.) Decided June 1, 1971.

23 Mich App 190 affirmed.

Van Leroy Hampton was convicted of assault with intent to commit murder. Defendant appealed to the Court of Appeals. Reversed and remanded for a new trial. The people appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald E. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*John F. Sopt,* for defendant on appeal.

SWAINSON, J.   Defendant Hampton, charged with assault with intent to commit murder, was convicted by a jury in Genesee County Circuit Court.   Subsequently, on April 1, 1966, he was sentenced to 7-1/2 to 20 years.   Defendant had interposed the defense of insanity at the time of the commission of the crime.   Counsel for the defendant requested that the jury be given a *Lyles* instruction (*Lyles* v. *United States* [1957], 103 App DC 22 [254 F2d 725]).   This would inform the jury that if defendant was found not guilty by reason of insanity, he would not thereby be released, but rather committed to a suitable institution for treatment.   The trial court refused to give the instruction requested.   On appeal, the Court of Appeals reversed based on *People* v. *Cole* (1969), 382 Mich 695, and *People* v. *Herrera* (1970), 383 Mich 49.   See *People* v. *Hampton* (1970) 23 Mich App 190.

The Court of Appeals held that the *Lyles* instruction applied to all cases on appeal as of the date of the filing of the *Cole* opinion which had properly preserved such issue for appeal.   From this decision, the people were granted leave to appeal (383 Mich 795).

The issue before the Court is whether the rule laid down in *People* v. *Cole* (1969), 382 Mich 695, should apply only prospectively (to cases commenced after December 2, 1969) or should extend to cases which had properly preserved the issue for appeal.

## I.

The issue as to whether a new rule of law should be applied retroactively or only prospectively is one which the courts have discussed in detail in innumerable cases.*   The United States Supreme Court

* See, e.g., *Linkletter* v. *Walker* (1965), 381 US 618 (85 S Ct 1731, 14 L Ed 2d 601).

held in *Great Northern R. Co.* v. *Sunburst Oil & Refining Co.* (1932), 287 US 358 (53 S Ct 145, 77 L Ed 360, 85 ALR 254), at p 364:

"We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly   *   *   *   , that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted."

This position has been consistently adhered to and this Court is under no constitutional compulsion to apply the *Cole* rule, either prospectively or retrospectively.

The United States Supreme Court has discussed various factors to be used in determining whether a law should be applied retroactively or prospectively. There are three key factors which the court has taken into account: (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice. See, *e.g., Linkletter* v. *Walker* (1965), 381 US 618 (85 S Ct 1731, 14 L Ed 2d 601); *Tehan* v. *United States ex rel. Shott* (1966), 382 US 406 (86 S Ct 459, 15 L Ed 2d 453).

In order to determine the purpose behind the *Cole* rule, we must first look at the *Lyles* case. In *Lyles* v. *United States, supra,* defendant was charged with grand larceny, robbery and the unauthorized use of a motor vehicle. He had been adjudged not competent, by reason of insanity, to stand trial in February 1955. Another hearing was held in November

1955, and at that time he was adjudged competent to stand trial. He pleaded not guilty to the crime charged, by reason of insanity. At the trial, the grand larceny charge was dismissed by the prosecution. A jury found the defendant guilty of robbery and the unauthorized use of a motor vehicle. On appeal, the District of Columbia circuit court sitting *en banc* affirmed his conviction. The trial judge had instructed the jury that if the defendant was found not guilty by reason of insanity, the court would commit him to St. Elizabeths Hospital. Six of the nine judges felt that this instruction was required. Judges Prettyman and Burger stated in a joint opinion (p 25):

"The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955 [69 Stat 610, D.C. Code § 24–301 (1951) (Supp V)]. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts."

Our Court adopted this rule in the case of *People*
v. *Cole, supra.* The defendant in *Cole* had been
convicted of murder in the second degree. The
Court of Appeals affirmed the conviction (McGREGOR,
J., with J. H. GILLIS, J. concurring and T. G. KAVA-
NAGH, J. dissenting on the ground that the jury
should have been given a *Lyles* type instruction) 8
Mich App 250. On appeal, the Supreme Court re-
versed. A review of the opinions filed indicates that
perhaps inadmissible evidence as to defendant's san-
ity had been introduced. However, a majority felt
that it was error not to have given the *Lyles* instruc-
tion. Justice T. M. KAVANAGH stated in the majority
opinion (pp 720, 721):

"We feel that *Lyles* v. *United States, supra,* is the
better reasoned authority and hold that in all crim-
inal trials or retrials taking place after the date of
the filing of this opinion, where the defense of in-
sanity is present and that issue is made submissible
by the proofs, the defendant, upon his own timely
request, or upon request of the jury, shall be entitled
to an instruction in accord with the rule of *Lyles.*"

It is clear that the primary purpose of this in-
struction is to insure that a defendant will not be
found guilty because the jury fears that he will be
set free if an insanity verdict is returned. Thus, this
decision goes to the very heart of our jury trial sys-
tem. The United States Supreme Court has applied
decisions retroactively where the guilt or innocence
of the defendant was at stake. Thus, in *Roberts* v.
*Russell* (1968), 392 US 293 (88 S Ct 1921, 20 L Ed
2d 1100), the court held that *Bruton* v. *United States*
(1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476),
which excluded a defendant's extrajudicial confes-
sion implicating a codefendant at a joint trial, is
a violation of the Sixth Amendment right to cross-

examination and should be applied retroactively both to state and Federal prosecutions.

See, also, *McConnell* v. *Rhay* (1968), 393 US 2 (89 S Ct 32, 21 L Ed 2d 2), applying the decision of *Mempa* v. *Rhay* (1967), 389 US 128 (88 S Ct 254, 19 L Ed 2d 336), retroactively; and *Arsenault* v. *Massachusetts* (1968), 393 US 5 (89 S Ct 35, 21 L Ed 2d 5), applying *White* v. *Maryland* (1963), 373 US 59 (83 S Ct 1050, 10 L Ed 2d 193), retroactively.

The people have pointed out numerous instances where the Supreme Court has applied decisions prospectively. However, an analysis of these opinions clearly indicates that they do not involve rules which go to the ascertainment of guilt or innocence. In *Tehan* v. *United States ex rel. Shott* (1966), 382 US 406 (86 S Ct 459, 15 L Ed 2d 453), the court held that *Griffin* v. *California* (1965), 380 US 609 (85 S Ct 1229, 14 L Ed 2d 106), did not apply retroactively and thus the adverse comment of a prosecuting attorney did not require reversal of the conviction. The court stated (p 416):

"By contrast, the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth."

See, also, *Linkletter v. Walker, supra,* where the Supreme Court held that *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933), applies prospectively, and *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199), where the court held that *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149), applies prospectively.

The second and third factors can be dealt with together, because the amount of past reliance will often have a profound effect upon the administration of justice. The question of a *Lyles* type instruction

was first raised in the *Cole* case. Justice T. M.
KAVANAGH stated, "It is a matter of first impression
in Michigan." Thus, the Supreme Court was not
overruling an earlier rule the trial judges had relied
on for many years. In *Linkletter* v. *Walker, supra,*
one of the main points of the United States Supreme
Court in not applying *Mapp* retroactively was that
law enforcement officers had relied on the rule as
set down in *Wolf* v. *Colorado* (1949), 338 US 25
(69 S Ct 1359, 93 L Ed 1782), for over a decade in
all parts of the country. That is not the situation
here, and no such large scale reliance has occurred.

The people contend:

"[T]here may well be a great number of convic-
tions in Michigan where the defendants interposing
that defense have been refused the *Lyles* type in-
struction as to the post-verdict consequences of a
verdict of not guilty by reason of insanity prior to,
and subsequent to the case of *People* v. *Cole,* 8 Mich
App 250 (1967)."

This may very well be true, however, the effect
on the administration of justice is, of course, a mat-
ter of degree to be determined based partially on the
goal to be accomplished in formulating a new rule.

The United States Supreme Court stated in *Rob-
erts* v. *Russell, supra* (p 295):

"And even if the impact of retroactivity may be
significant, the constitutional error presents a
serious risk that the issue of guilt or innocence may
not have been reliably determined."

This statement is applicable to this situation.
Presumably there are other cases in which this issue
was raised. Clearly, however, the number will be
small and in no case will it be anywhere near the
number of cases affected by decisions such as *Gideon*

v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L Ed 2d 799, 93 ALR2d 733).

## II.

The people contend that the Court of Appeals erred in concluding that *People* v. *Herrera, supra,* required reversal. In *Herrera,* we reversed a conviction by the following brief statement: "For the reasons given and authorities cited in *People* v. *Cole* (1969), 382 Mich 695, this cause is reversed and remanded for a new trial."

The people contend that both *Cole* and *Herrera* were reversed because of the inadequacy of the State's proofs to establish sanity beyond a reasonable doubt. In the *Cole* case, four Justices wrote concurring opinions, in addition to the opinion of the Court by Justice T. M. KAVANAGH. In order to dispel any ambiguity we set forth the following in applying the *Cole* rule:

We hold that the rule laid down in *People* v. *Cole, supra,* properly applies to all cases where:

1. It is determined, from the proofs, that the issue is submissible to the jury;

2. That the defendant or a member of the jury requested such an instruction as to the disposition of the defendant if he were to be found not guilty by reason of insanity; and

3. The trial court thereafter refused to so instruct, and

4. The issue was properly preserved for appeal.

To rule otherwise would be to unfairly punish the defendant because Cole's case arrived for our disposition before his did.

The people also contend, that since Hampton's attorney told the jury of his disposition if he were found not guilty by reason of insanity, we should

affirm his conviction. There is a great deal of distinction between the formal instructions given to a jury by a trial judge and the assertions to a jury by counsel. Counsel are advocates and their views, although affirmatively stated, are not binding on the jurors. One of the prime purposes of the court's instructions to the jury is to definitively inform the jurors of the applicable law and to separate the law from advocacy. To allow affirmance of the conviction because of counsel's statement would be as Justice T. G. Kavanagh said in his dissent in *People* v. *Cole* (1967), 8 Mich App 250, 259:

"To do a little evil to accomplish a great good is a temptation as old as Eve. To find an innocent person guilty to protect society, alas, may appear to some as a fair bargain, but it is the old temptation nonetheless."

The decision of the Court of Appeals is affirmed.

T. M. KAVANAGH, C. J., and ADAMS, T. G. KAVANAGH, and WILLIAMS, JJ., concurred with SWAINSON, J.

BLACK, J. (*dissenting*). I appropriate temporarily a deathless phrase appearing in one of Mr. Justice Holmes' regularly recalled dissenting opinions (*Northern Securities Company* v. *United States* [1904], 193 US 197, 401 [24 S Ct 436, 48 L Ed 679]). It is that all we have to do in this case is "to read English intelligently." Then, having read, we must either apply that English or shamefully repudiate still another judicial pledge.

These decisive and presently applicable words appear in a fully contextual paragraph of present Chief Justice KAVANAGH's opinion of *People* v. *Cole* (1969), 382 Mich 695, 720, 721:

"We feel that *Lyles* v. *United States, supra,* is the better reasoned authority and hold that in all criminal trials or retrials taking place after the date of the filing of this opinion, where the defense of insanity is present and that issue is made submissible by the proofs, the defendant, upon his own timely request, or upon request of the jury, shall be entitled to an instruction in accord with the rule of *Lyles.*"

Despite this firm commitment, what does today's newly assembled majority say? Why only that we, exercising the raw power of temporal control, do now cast aside what thus was laid down—a bare 14 months ago—for the specific guidance of prosecutors, defenders and appealers of criminal cases, and surely for trial judges themselves; that in the place thereof we now hold that *Lyles* "properly" applies to *all* criminal cases for the purpose of *total retroactivity.* For the specifics of this latest breed of retrogression, read the majority opinion, *ante* at 673.

This defendant was jury convicted in 1966 of the crime of assault with intent to murder. That particular offense against the peace and dignity of the people of our state is still regarded as a bit reprehensible, for it amounts in fact to a calculated effort to murder a human being that fails through no fault of the felon himself.

His trial proceeded to verdict and sentence. At that time the prosecutor, the defense counsel, and certainly the trial judge himself, were obligated upon oath to attend the trial according to the law of our state as it read then in our books;[1] not as a then totally unknown Court seated in early 1971 might solemnly declare to the very contrary. No one

[1] On that score, see the majority opinion of *People* v. *Cole* (1967), 8 Mich App 250; also Chief Justice KAVANAGH's open recognition, on review of *Cole,* of the majority rule (382 Mich at 718, 719).

then, not even a Cardozo, possibly could have foreseen that the rule of *Lyles* would be adopted here, prospectively, some four years later. Nor could any of the then participants in this 1966 trial have dreamed that *Cole* would be outdone blithely in 1971, by a peremptory order for *total* application *ex post facto* of the *Lyles* rule.

There is a grimly portentous message here, as our majority issues this latest order for new trial of one who, like so many of his kind, probably cannot be tried again. It is that all law enforcement officers, all public prosecutors and all trial judges may no longer depend upon plainly written precedents as they go about their duties in the sworn area of criminal justice. They might better employ their time upon what to them is the *sure* case, than to spend useless effort on appeals by the people for justice under what we once knew as dependable precedents; dependable because the word of the Court stood back of them. They should realize by now that a felony prosecution in Michigan is never over, or concluded legally, until the defendant is either acquitted or dead, or released *nolle* on joint motion of a discouraged prosecutor and a toilworn trial judge. The prosecutor and trial judge who, upon release of these opinions, cannot read this new handwriting on our wall of criminal justice will surely need quick eyetests.

This of course is an opinion of dissent. To express it I have already employed words of dissent written by Justice Holmes. I conclude discussion of this phase of the present prosecutor's vain appeal with submission of more like words, written by Mr. Justice Roberts for *Smith* v. *Allwright* (1944), 321 US 649, 670 (64 S Ct 757, 88 L Ed 987):

"It is regrettable that in an era marked by doubt and confusion, an era whose greatest need is stead-

fastness of thought and purpose, this court, which
has been looked to as exhibiting consistency in ad-
judication, and a steadiness which would hold the
balance even in the face of temporary ebbs and flows
of opinion, should now itself become the breeder
of fresh doubt and confusion in the public mind as
to the stability of our institutions."

I really fear that, ere another six months expire,
ours will be known as the biennially pendulous Su-
preme Court of Michigan.

There is another little matter of majority error
here; the error of ignoring a statutory fact as the
Court hastens to another wholly retroactive over-
rulement.  Citing in support "Section 28.967 Michi-
gan Statutes Annotated," counsel for defendant er-
roneously requested that the jury be given this in-
struction:

"When a person accused of any felony shall have
been acquitted upon trial upon the ground of insan-
ity, the Court shall ascertain the issue of insanity.

"If such person is found insane, the Court shall
order that he be turned over to the sheriff for safe
custody and removal to the Ionia State Hospital, to
which hospital such person shall be committed to
remain until restored to sanity."

Quite aside from *Lyles*, the trial judge would have
erred grossly had he so instructed the jury.  If *any*
instruction upon the point of acquittal by reason
of insanity was to be given at all, that instruction
should have been delivered pursuant to CL 1948,
§ 766.15c (Stat Ann 1954 Rev § 28.933[3]).[2]  Read
§ 766.15c:

---

[2] This section was repealed effective March 10, 1967 (some 13
months after *Hampton* was tried and convicted), by PA 1966, No
266.  It was "the law" nevertheless, when this erroneous request
to charge was submitted to and denied properly by the trial judge.

"Sec. 15c. Any person, who is tried for the crime of murder and is acquitted by the court or jury by reason of insanity, shall forthwith be committed by order of said court to a state hospital for the criminally insane for the remainder of his natural life. The governor may, however, discharge such person upon recommendation of the commission, based upon an investigation by it and its determination that such discharge will not be harmful to other persons or their property."

I realize that none of this will faze the Court, headlong bent as it is to provide another retroactive avenue leading to another plethora of delayed appeals and applications for habeas corpus by those long since properly convicted of serious crimes. But some record ought to be made, as the Court opens the floodgates. Waiting in the wings, as present counsel have stipulated, are four already known like cases, arising in Genesee and Washtenaw counties only. This Court has yet another, up for submission during the coming April term. Who knows how many others lie asleep, all due for gleeful awakening when *People* v. *Hampton* hits the great fan of liberal license?

As for *People* v. *Herrera* (1970) 383 Mich 49, it need only be said that we there laid down no rule of retroactivity contrary to *People* v. *Cole*. Able to agree only upon an order for reversal and remand for new trial of *Herrera,* the Court limited disposition of the appeal as it did for so many dissident reasons that no one of us cared to record what in total separation would have resulted in a fruitless *vomitus* of words. In sum, our disposition of *Herrera* was no more than a 24 word special order under GCR 1963, 865.1(7), the mandate of which was a new trial for Mrs. Herrera, she alone. I do not in fact understand from the present majority opinion that

the endorsers thereof have concluded otherwise. Their aim, as I perceive, is something else, that is, a wide open invitation to those who wish to be retried aided by a § 766.15c jury instruction.

To bolster its misguided opinion that the trial judge should have granted the defendant's equally misguided request to charge (under that wrong statute), today's majority adopts for a conclusion Justice T. G. KAVANAGH's homespun homily that "To do a little evil to accomplish a great good is a temptation as old as Eve."

The quality of that kind of mercy for this particular felon really is strained. Did not Bassonio appeal rightfully and successfully to the judge, in The Merchant of Venice (act 4, sc 1):

> "And I beseech you
> Wrest once the law to your authority, —
> To do a great right, do a little wrong, —
> And curb this cruel devil of his will."?

I vote to reverse for entry of an order affirming an errorless judgment of the trial court; a judgment entered five years ago, long before the *Lyles* rule entered our reports for declared prospective effect.

T. E. BRENNAN, J. (*for reversal*). My view on the question of prospectivity *vs.* retroactive is already on record. *Smith* v. *Ginther* (1967), 379 Mich 208.

Prospective overrulement is nothing more than an unkeepable judicial promise to apply overruled precedents to certain future cases.

There wouldn't be any argument here if the Court had been satisfied with the long standing rule that the jury is not supposed to speculate upon the disposition of the defendant which may follow their verdict.

*Lyles* is not a well reasoned opinion. The *Lyles* Court's imputation of common understanding of the effects of verdicts missed the mark widely. The *Lyles* rule, applied in Michigan via *People* v. *Cole* (1969), 382 Mich 695, is a mistake. The doors it opens for more invitations to jury speculation will soon bang loudly in the winds.

I vote to reverse.