## PEOPLE v MOHEAD

Docket Nos. 78-4381, 43559. Submitted February 5, 1980, at Grand Rapids.—Decided July 18, 1980. Leave to appeal applied for.

Norman Mohead was charged with breaking and entering. On the first day of trial a supplemental information was filed, charging him as a third felony offender. He was convicted of breaking and entering, Calhoun Circuit Court, Creighton R. Coleman, J., and subsequently pled guilty to an amended supplemental information charging him as a second offender. An enhanced sentence was imposed. Defendant appealed. Subsequent to filing his claim of appeal, the Supreme Court decided *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979), on which defendant based his attack on the enhanced sentence. *Held:*

The supplemental recidivist information was promptly filed prior to conviction, providing fair notice to defendant and involving no prosecutorial impropriety. There is no end to be served by affording any retrospective effect to the "simultaneous filing" rule announced in *Fountain.*

Affirmed.

R. B. Burns, J., dissented. He would hold that under *People v Fountain,* defendant's habitual offender conviction must be vacated and his sentence for breaking and entering reinstated since the habitual offender charge was not filed simultaneously with the information which charged the last felony. He would vacate the habitual offender conviction.

### Opinion of the Court

1. Criminal Law — Habitual Offenders Act — Enhanced Sentences — Prosecuting Attorneys — Post-Conviction Filing — Statutes.

   It is not permissible to impose an enhanced sentence under the habitual offenders act where the prosecutor has reliable infor-

References for Points in Headnotes

[1, 2, 4] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 17 *et seq.*

[3] 20 Am Jur 2d, Courts § 85.

73 Am Jur 2d, Statutes § 347 *et seq.*

mation pertaining to a person's prior felony record before trial but does not charge the person as an habitual offender until after conviction on the current felony charge (MCL 769.10, *et seq.;* MSA 28.1082, *et seq.*).

2. CRIMINAL LAW — HABITUAL OFFENDERS ACT — ENHANCED SENTENCES — PRE-CONVICTION FILING — STATUTES.

The imposing of an enhanced sentence under the habitual offenders act is permissible where the supplemental recidivist information is filed on the first day of trial and prior to defendant's conviction of the charged offense (MCL 769.10, *et seq.;* MSA 28.1082, *et seq.*).

3. COURTS — APPLICATION OF NEW LAW — PURPOSE — RELIANCE — EFFECT.

The three key factors to be taken into account by a court in determining whether a law should be applied retroactively or prospectively are (1) the purpose of the new rule, (2) the general reliance on the old rule, and (3) the effect on the administration of justice.

DISSENT BY R. B. BURNS, J.

4. CRIMINAL LAW — HABITUAL OFFENDERS — CHARGE — SIMULTANEOUS FILING — FAIR NOTICE — APPEARANCE OF IMPROPRIETY.

*An habitual offender charge may only be filed with the information which charged the last felony to provide fair notice to the accused and avoid an appearance of prosecutorial impropriety.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James Norlander,* Prosecuting Attorney, and *Conrad J. Sindt,* Assistant Prosecuting Attorney, for the people.

*Janet M. Tooley,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and R. B. BURNS and MAC-KENZIE, JJ.

DANHOF, C.J. In an information filed in Calhoun County on April 17, 1978, the defendant was charged with breaking and entering, MCL 750.110; MSA 28.305. On the first day of trial, July 20,

1978, the prosecutor filed a supplemental information charging the defendant as a third offender, MCL 769.11; MSA 28.1083, alleging prior felonies in Calhoun and neighboring Kalamazoo Counties. This information was submitted without objection from the defendant. Five days later, the defendant was convicted of the charged offense, and, after a partial trial on the recidivist charge, he pled guilty to an amended supplemental information charging him as a second offender, MCL 769.10; MSA 28.1082. An enhanced sentence of 8 to 15 years imprisonment was imposed.

Of the issues raised in this appeal, one merits discussion. Subsequent to the defendant's claim of appeal, the Supreme Court issued its opinion in *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979). At oral argument, that case was the basis of an attack on the enhanced sentence. By leave, the parties have filed supplemental briefs.

In *Fountain,* defendant Fountain was tried and convicted of carrying a concealed weapon, for which he was sentenced to three to five years imprisonment. After he filed a claim of appeal from that conviction, his prosecutor charged him as a fourth offender. Tried on that supplemental information, Fountain's sentence was enhanced to 15 to 30 years. Defendant Jones was tried and convicted of unarmed robbery and, before sentencing, pled guilty to a supplemental third offender information that was filed nearly a month after the conviction. Two separate sentences were imposed.

The Supreme Court vacated the sentence enhancement in each case in an opinion so brief that it can be quoted in its entirety, omitting only the facts of the cases set forth above:

"PER CURIAM. Is it permissible to enhance sentence

under the habitual offenders act if the prosecutor has reliable information pertaining to a person's prior felony record before trial but does not charge the person as an habitual offender until after conviction is entered on the current felony charge?

\* \* \*

"A prosecutor who knows a person has a prior felony record must promptly proceed, if at all, against the person as an habitual offender. *People v Hatt,* 384 Mich 302; 181 NW2d 912 (1970); *People v Stratton,* 13 Mich App 350; 164 NW2d 555 (1968). The prosecutor is not foreclosed from proceeding against a person as an habitual offender after conviction on the current offense provided he is unaware of a prior felony record until after the conviction. MCL 769.13; MSA 28.1085. The only recognized exception to this rule is when the delay is due to the need to verify out-of-state felony convictions based on the 'rap sheet'. *People v Hendrick,* 398 Mich 410; 247 NW2d 840 (1976).

"Here the prosecutors must be presumed to have known of the defendants' prior felony records because their respective offices prosecuted the prior felonies. The habitual offender charges should have been filed with the information which charged the last felony to provide fair notice to the accused and avoid an appearance of prosecutorial impropriety.

"In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the decisions of the Court of Appeals, vacate the habitual offender sentences, and order that Fountain's 3- to 5-year sentence for carrying a concealed weapon be reinstated, and Jones' 10- to 15-year sentence for unarmed robbery remain intact.

"Reversed." (Footnotes omitted.) 407 Mich 96, 97-99.

The Chief Justice, joined by Justice RYAN, wrote separately:

"I concur in the results reached. Although the result in *Jones* may not be statutorily or constitutionally required, especially in the absence of any allegation or showing of prejudice from the delay, it is based on this

Court's supervisory powers over the practices and procedures used in the courts of this state. In order to avoid even the appearance of impropriety, the prosecutor should file the habitual offender information with the information charging the principal offense when he or she has prior knowledge of defendant's previous conviction(s) Such information should be drawn up and presented so as to insure that it will not place the defendant's past criminal record before the jury prior to the jury's finding of guilt or innocence on the principal charge. See *People v Burd,* 1 Mich App 178; 134 NW2d 843 (1965)." (Footnotes omitted.) 407 Mich 96, 99-100.

The defendant claims that the prosecutor must be held to have had knowledge of his prior felony convictions before the first day of trial and argues that *Fountain* requires us to vacate the enhancement of the sentence. The prosecutor responds that to do so would upset a past proceeding that was in compliance with the law in effect at the time of sentencing, affording an unwarranted "retroactive" effect to *Fountain's* rule.

Our analysis of *Fountain* suggests that that opinion sets forth two overlapping but distinct rules, each requiring a separate examination of its meaning and application.

The dimensions of the first *Fountain* rule are measured by the Court's statement of the question presented by the facts of the Fountain and Jones convictions:

"Is it permissible to enhance sentence under the habitual offenders act if the prosecutor has reliable information pertaining to a person's prior felony record before trial but does not charge the person as an habitual offender until after conviction is entered on the current felony charge?" (Footnote omitted.) 407 Mich 96, 97.

That question was answered in the negative. It is on this rule that the defendant's appeal is based.

This case is quite clearly outside the facts, the stated question, and the holding in *Fountain,* for the supplemental recidivist information was filed five days *before* conviction.

Because the defendant's claim is based on the Court's statement that "a prosecutor who knows a person has a prior felony record must *promptly* proceed, if at all, against the person as an habitual offender", we must also decide whether a supplemental recidivist information that is filed before conviction may nevertheless not be sufficiently prompt under *Fountain's* first rule. To this end, we turn to the decisions upon which the promptness principle is apparently based: *People v Hatt,* 384 Mich 302; 181 NW2d 912 (1970), and *People v Stratton,* 13 Mich App 350; 164 NW2d 555 (1968).

*Hatt* is of little assistance in this regard. While noting that earlier cases had approved the use of a single information to charge both a felony and recidivism, the *Hatt* Court reversed that felony conviction because the two charges were tried in a "unitary trial" in which the defendant's prior felony convictions were necessarily disclosed to the jury trying the latest offense. *Hatt* approved the resolution of that problem posited by *Stratton.*

*Stratton* set out a procedure by which a defendant's prior felony convictions can be kept from the jury trying a later offense until conviction on that charge is had. It had been the defendant's contention in that case that only a completely different jury could try the recidivist charge. In an initial opinion, the Court apparently held that the statute provided only for the filing of a supplemental information *after* conviction of the later offense. On rehearing, it was held that prosecutors

were not precluded from filing recidivist charges before conviction:

"Implicit in the language just quoted—'need not have been indicted and convicted as a previous offender' and 'may be proceeded against as provided in the following section' —is the concept that the procedure set forth in the 'following section,' section 13, need not be followed and that an accused person may be punished pursuant to sections 10, 11 and 12 when 'indicted and convicted' without regard to section 13.

"Thus, as we now read sections 10, 11, 12 and 13, they contemplate 2 separate situations and procedures to be followed when the prosecutor desires to make possible the meting out of an increased penalty pursuant to the habitual criminal sections of the code of criminal procedure. The procedure set forth in section 13 is to be followed whenever it appears to the prosecutor 'after conviction' of the current charge that the felon has a prior felony record. However, where it appears to the prosecutor before conviction of the current charge that the accused person is a prior felon, the accused person is to be informed against as a prior offender prior to conviction on the current charge; the procedure set forth in section 13 need not be followed." (Footnotes omitted.) 13 Mich App 350, 356.

Our inspection of *Stratton* reveals no assignment of legal significance to any stage of prosecution other than the time of conviction. Turning as a last resort to *People v Hendrick,* 398 Mich 410, 420-421; 247 NW2d 840 (1976), which the *Fountain* Court cites as the "only recognized exception" to the rule that recidivist charges must be filed before conviction, we find only this ambiguous resolution of a claim that a postconviction filing came too late:

"The Court said [in *People v Marshall,* 41 Mich App 66; 199 NW2d 521 (1972)] 'the prosecutor had discretion

to file a supplemental information under the Habitual Criminal Act after conviction and is not limited to filing such supplemental information prior to conviction of the current charge, where he has knowledge of the previous conviction'. However, defendant's conviction was reversed because

'once the prosecutor was aware that defendant would not be sentenced to a mandatory life imprisonment, he should have acted promptly to file his supplemental information. Any delay was solely for his convenience. Therefore, where no good reason exists for the delay in filing a supplemental information charging the defendant as a subsequent offender, and the delay on the part of the prosecutor substantially prejudices defendant's rights, the filing of that supplemental information clearly denies defendant his right to due process of law.'

"In this case the prosecutor had an FBI rap sheet indicating convictions in Washington and North Dakota. We agree it 'would be foolish to rely solely upon a rap sheet for information'. The prosecutor acted properly in this case. The Court of Appeals is affirmed."[1]

These cases, the foundations of *Fountain's* first rule, give us no indication that a prosecutor who files a recidivist information before conviction of a later felony charge has not proceeded "promptly". We are thus unable to vacate the defendant's sentence enhancement on the authority of *Fountain's* first rule. This disposition makes it unnecessary to determine whether this rule should be afforded "retroactive" effect.[2]

---

[1] Justice LEVIN dissented from the opinion in *Hendrick*, laying great weight on the notion that defendants who know before trial that recidivist charges are to be pursued will prepare more completely for trial than defendants who are not so informed. This view attracted no other adherence.

[2] The Supreme Court has applied *Fountain* to summarily reverse two cases in which supplemental recidivist informations were filed after conviction and which were in the appellate process when *Fountain* was released.

In *People v Morris*, 407 Mich 885 (1979), the sentence enhancement

The preceding discussion exhausts the defendant's arguments in this appeal. However, *Fountain* sets forth another rule which, if applicable to this case, would appear to require that we vacate the enhancement of the defendant's sentence. The Court wrote:

"Here the prosecutors must be presumed to have known of the defendants' prior felony records because their respective offices prosecuted the prior felonies. The habitual offender charges should have been filed with the information which charged the last felony to provide fair notice to the accused and avoid an appearance of prosecutorial impropriety." 407 Mich 96, 99.

This rule is distinguished from the first *Fountain* rule in several important respects. Although it overlaps the first rule, it has a potentially far greater impact on prosecutorial practices. It establishes a rigid schedule for filing informations that is not found in earlier cases. It is set forth without citation to case law, and is not necessary to the decision of the case, given the first *Fountain* rule.

The prosecutor does not suggest that he filed the supplemental habitual offender information "with" the information charging the defendant with

---

was vacated, and the defendant's initial sentence was reinstated with citation to *Fountain*.

In *People v Devine,* 407 Mich 904; 284 NW2d 342 (1979), on similar facts, the same relief was granted, the Court commenting, "In resolving this case we intimate no opinion on the retroactivity of *[Fountain]*."

In *People v Ronald Brown,* 407 Mich 913 (1979), this Court's summary affirmance of the conviction was reversed, and the case remanded "* * * for briefing and argument of the issues of (1) whether the timing of the prosecutor's filing of the supplemental information was violative of the rule announced in *[Fountain]*, and (2) if so, whether *Fountain* should be given retroactive effect."

The disposition and comments in *Devine* indicate a view that the first *Fountain* rule is not sufficiently novel to raise retroactivity questions when applied to a case that was on appeal when *Fountain* was released.

breaking and entering. Rather, the prosecutor argues that *Fountain's* ruling should not be applied "retroactively" to a case that was pending in this Court when *Fountain* was released.

Discussing the problems of retrospective and prospective application of newly announced principles of law, the Supreme Court of the United States wrote in *Linkletter v Walker,* 381 US 618, 629; 85 S Ct 1731; 14 L Ed 2d 601 (1965):

"Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. We believe that this approach is particularly correct with reference to the Fourth Amendment's prohibitions as to unreasonable searches and seizures. Rather than 'disparaging' the Amendment we but apply the wisdom of Justice Holmes that '[t]he life of the law has not been logic: it has been experience.' Holmes, The Common Law 5 (Howe ed 1963)."

Our Supreme Court adopted the *Linkletter* restatement of these interrelated principles in *People v Hampton,* 384 Mich 669, 674; 187 NW2d 404 (1971):

"[T]his Court is under no constitutional compulsion to apply the *Cole* rule, either prospectively or retrospectively.

"The United States Supreme Court has discussed various factors to be used in determining whether a law should be applied retroactively or prospectively. There are three key factors which the court has taken into account: (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice. See, *e.g., Linkletter v Walker* (1965), 381 US 618 (85 S Ct 1731, 14 L Ed 2d 601);

*Tehan v United States ex rel Shott* (1966), 382 US 406 (86 S Ct 459, 15 L Ed 2d 453)."

*Fountain* set forth the "simultaneous filing" rule "to provide fair notice to the accused and avoid an appearance of prosecutorial impropriety". By its terms, the rule is absolute, applying to every recidivist prosecution regardless of actual prejudice to the defendant or real lapse of prosecutorial integrity. By implication, it states that pretrial notice of a prosecutor's intent to seek sentence enhancement is a right of some weight.

Although our courts do not lack the ability and authority to address particular instances of unfair surprise or prosecutorial misconduct (see *People v Marshall,* 41 Mich App 66; 199 NW2d 521 [1972]), in the inflexibility of its application this *Fountain* rule seeks to foreclose completely the chance that defendants might suffer harm from such events. It thus shows the main identifying characteristic of a "prophylactic" rule, guarding in every prosecution rights that are actually violated in but a few. It represents a determination that its extra measure of protection to defendants justifies the price to be paid in prosecutorial effort and discipline and frustration of the legislative scheme to impose enhanced sentences on habitual criminals.

The rules that have governed filing of recidivist charges comprise a patchwork of varying concepts and concerns, as the review of that history in *Hendrick, supra,* illustrates. It was once believed that a court was without jurisdiction to impose an enhanced sentence unless early filing of recidivist charges produced a "unified" trial. *In re Brazel,* 293 Mich 632; 292 NW 664 (1940), apparently abandoned jurisdictional worries in favor of giving more discretion to prosecutors.

The next problem to receive attention was the presentation of "unified" recidivist informations to juries empaneled to hear evidence in prosecutions for later felonies. See *People v Burd,* 1 Mich App 178; 134 NW2d 843 (1965). In *People v Cairns,* 4 Mich App 633; 145 NW2d 345 (1966), this Court suggested that to avoid this prejudicial event, prosecutors should withhold supplemental recidivist informations until *after* conviction of a subsequent offense. In *Stratton, supra,* it was held that a prosecutor could file his supplemental information before conviction if he kept it from untimely exposure to the jury. The ambiguous resolution of *Hendrick* either announced no firm rule of prosecutorial timing or held that there was generally an obligation to file recidivist charges before conviction of a later offense. Justice LEVIN'S lone dissent is apparently our courts' only expression of concern for lengthy pretrial notice of prosecutorial intent to press habitual offender charges.

While *Hendrick* provides some support for the view that recidivist charges may not be filed after conviction of a later offense, we have found no case reversing habitual offender sentence enhancement for that reason alone. That a supplemental information charging a defendant as an habitual offender must be filed *with* the information charging the latest offense appears for the first time in *Fountain.*

This history shows that until *Fountain's* release, the prosecutors of this state had good cause to believe that their notice obligation to the recidivist was discharged by filing a supplemental information any time before conviction. We do not doubt that scores of prosecutors were surprised to find their practices disapproved by the *Fountain* opinion.

The third *Hampton-Linkletter* factor is "the effect on the administration of justice" that would be produced by a suggested application of the new rule. This "formula" statement is expanded in *Linkletter,* where the Court considered whether "retroactive operation [of the new rule] will further or retard its operation". 381 US 618, 629. In this case, it is suggested that the "simultaneous filing" rule should be applied to a case that was on appeal when *Fountain* was released. We are not asked to consider whether absolute "Blackstonian" retroactivity is in order.

The "simultaneous filing" rule is violated, if at all, when the information charging a later offense is filed. If the rule's schedule is not observed, its power to insure against unfair surprise and the appearance of prosecutorial impropriety is immediately reduced. The automatic invalidation of a subsequent enhanced sentence is not itself a restoration of that protection but does serve to completely vindicate the right denied a defendant who has suffered the injuries the rule was designed to prevent.

In the vast majority of cases, however, neither prosecutorial impropriety nor lack of fair notice will be shown merely by noncompliance with *Fountain's* rule; the common practice of plea bargaining can easily produce an entirely proper and harmless reason for delay. In such cases, automatic invalidation cures no real injury but merely pleases defendants and chastises prosecutors. In cases arising after *Fountain's* release, the undeserved benefit to defendants is incidental to the completely legitimate end of enforcing the state's rules of prosecutorial practice. The "discipline" thus meted out to prosecutors who ignore the law furthers the operation of the rule by producing compliance in later cases.

However, should *Fountain's* rule be applied to cases in which original informations were filed before that rule was announced, an entirely different balance of values would be produced. As in all cases in which no actual harm has resulted, the benefit to this class of defendants would be undeserved. But in these cases, the goal of enforcing prosecutorial adherence to *Fountain's* rule cannot be furthered by "penalizing" the prosecutors, for there has been no abandonment of any known prosecutorial duty. Application of the rule to cases antedating its genesis can please defendants, frustrate the statutory scheme, and demoralize prosecuting authorities, but can do nothing more.

The consequences of affording even limited retrospective application to *Fountain's* second rule would be significant. If the rule were applied to all cases not final on the day of *Fountain's* release, it would invalidate every successful but noncomplying recidivist prosecution that was on appeal, awaiting the filing of a claim of appeal, awaiting sentencing, or otherwise in the circuit courts of this state on August 28, 1979. In not one of these cases could the prosecutor who filed the information charging a subsequent felony have known that a supplemental habitual offender information should have been filed "with" it. In none of these cases could any of the purposes of the simultaneous filing rule be furthered by vacating the enhanced sentence. We conclude that there is no end to be served by affording any retrospective effect to this prophylactic rule and that the costs of doing so would be great. The largest class of cases to which the rule can apply without fruitless injury to the sound administration of justice includes only those prosecutions in which the information charging the current or later felony was filed after

August 28, 1979. The case at bar falls outside that class.

Affirmed.

MacKenzie, J. concurred.

R. B. Burns, J., *(dissenting)*. After having reviewed the record, I find no prejudicial error as to defendant's breaking and entering conviction and agree with the majority opinion that this conviction should be affirmed. I would, however, hold that under *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979), defendant's habitual offender conviction must be vacated.

In *Fountain* the Supreme Court held that when a prosecutor has knowledge of a defendant's felony record an habitual offender charge may only be filed "with the information which charged the last felony to provide fair notice to the accused and avoid an appearance of prosecutorial impropriety". 407 Mich 96, 99.

Generally, in determining the application of a Supreme Court ruling it is necessary to focus on whether the court has set forth a new rule of law or has merely restated or clarified existing law. The following factors would be analyzed to determine the application of a new rule of law: "(1) The purpose of the new rule, (2) general reliance on the old rule and (3) the effect on the administration of justice". *People v Kamin,* 405 Mich 482, 494; 275 NW2d 777 (1979).

When a new rule of law is set forth by the Supreme Court, there are a variety of ways the rule may be given effect. *Placek v Sterling Heights,* 405 Mich 638, 662; 275 NW2d 511 (1979). A new rule of law may be made applicable, for example, to future cases and all pending cases or to future cases and the case at bar. In *People v*

*Jenkins,* 395 Mich 440; 236 NW2d 503 (1975), the Court limited the application of the new rule of law therein to the case at bar and all cases tried after an arbitrarily selected date. A ruling which merely restates or clarifies existing law, on the other hand, must be applied to the broadest category of cases, as nothing new is required which was not already mandated.

After balancing the relevant considerations, I do not believe that it is necessary to decide whether *Fountain* announced a new rule of law because I find that consideration of the traditional factors used to limit the application of a new rule produces the same result as would flow from a determination that *Fountain* merely clarifies or restates existing law. See *People v Kamin, supra,* 494.

Accordingly, I would apply the requirements of *Fountain* to future cases and to all cases which were pending at the date of the *Fountain* decision. And, when considering the present case in light of the Supreme Court's ruling in *Fountain,* I would vacate defendant's habitual offender sentence and reinstate defendant's sentence for breaking and entering.