PEOPLE v McCOMMONS

Docket No. 48640. Submitted November 3, 1980, at Detroit.—Decided
February 5, 1981.

Albert McCommons was convicted in Recorder's Court of Detroit
after pleading guilty to a charge of breaking and entering an
occupied dwelling. He was sentenced to 7-1/2 to 15 years in
prison, Joseph A. Gillis, J. Defendant pled guilty to the charge
as part of a plea bargain wherein the prosecutor agreed not to
charge defendant as an habitual offender if he agreed to plead
guilty. On appeal, defendant contends the plea bargain was
illusory because the prosecutor failed to file a supplemental
information charging the defendant as an habitual offender at
the same time the information charging the principal offense
was filed. Defendant contends that this failure precluded the
prosecution from bringing habitual offender charges against
him based on the breaking and entering charge. *Held:*

Although the prosecutor did not file a supplemental informa-
tion along with the information charging the principal offense,
he did file a notice of intent to file a supplemental information
for prosecution as an habitual criminal on the following day.
This notice served the same purpose as a supplemental infor-
mation, namely, to provide fair notice to the accused and to
avoid any appearance of prosecutorial impropriety. Thus, al-
though the prosecution did not strictly comply with the rule
laid down in *People v Fountain,* 407 Mich 96; 282 NW2d 169
(1979), the purposes for which the rule was announced were
fulfilled. In the absence of a clear mandate from the Supreme
Court that strict compliance is necessary, fulfillment of the
purposes of the rule is a sufficient basis to affirm defendant's
conviction.

Affirmed.

N. J. KAUFMAN, J., concurred in the resolution of the issue
raised on appeal.

REFERENCES FOR POINTS IN HEADNOTES

[1] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders
§ 17.5.

61 Am Jur 2d, Pleading §§ 288-294.

CRIMINAL LAW — HABITUAL OFFENDERS — SUPPLEMENTAL INFORMA-
TIONS — SIMULTANEOUS FILING — STRICT COMPLIANCE.

> A plea bargain based upon an agreement not to bring habitual
> offender charges against the defendant was not illusory where
> the prosecutor filed a notice of intent to file a supplemental
> information for prosecution as an habitual criminal one day
> after the information charging the principal offense was filed
> because, although there was not strict compliance with the rule
> of a precedent case that a supplemental information charging a
> defendant as an habitual offender must be filed with the
> information charging the principal offense, the purposes for
> which the rule was announced were fulfilled and, in the ab-
> sence of a clear mandate from the Supreme Court, such fulfill-
> ment of purpose obviates the need for strict compliance.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Edward Reilly Wilson,* Principal Attorney, Appeals, for the people.

*Sheldon M. Scharg,* for defendant on appeal.

Before: BASHARA, P.J., and N. J. KAUFMAN and R. M. MAHER, JJ.

PER CURIAM. Defendant was convicted on his plea of guilty to a charge of breaking and entering an occupied dwelling, MCL 750.110; MSA 28.305. He was sentenced to a prison term of from 7-1/2 to 15 years and appeals by right.

The information charging defendant with the breaking and entering was filed on October 1, 1979. On the next day, the prosecution filed a document entitled "Notice of Intent to File Supplemental Information for Prosecution as an Habitual Criminal". The document is addressed to the defendant, his attorney, and the court, and essentially advises these parties of the intention referred to in its title. Handwritten in the margin is an additional notice stating "Original information

to be signed at first pretrial". No supplemental information was actually filed.[1]

A calendar conference was scheduled for October 11, 1979, and, on that date, defendant was offered a plea agreement by which, in exchange for his plea of guilty, no supplemental information would be filed and the sentence would be set at 7-1/2 to 15 years. The trial court graphically stated the defendant's options at the outset of the hearing:

*"THE COURT:* This is File 79-06230, Albert McCommons.

"Mr. McCommons, you have two prior felony convictions.

"You are now charged with breaking and entering an occupied dwelling house, which normally would carry a maximum of 15 years. If they file a supplemental and you are convicted, you can get double the normal sentence, which would be 30 years—20 to 30.

"The prosecutor has offered to accept a plea to 7-1/2 to 15 years.

"You can take your choice or go to trial. We have nothing in between.

"If you want to take a plea, fine. If you want to go to trial, the trial will be in December.

"Your exposure could be up to 30 years in prison with no good time.

*"DEFENDANT:* Your Honor, can I get the time reduced?

*"THE COURT:* No, you can't get anything lower than 7-1/2.

"I can't make it more clear than that. There is no good time on the 7-1/2. You can get 20 to 30 with no good time, too.

[1] The lower court record contains a supplemental information, but it is incomplete and not dated. We suspect, based on the order in which it appears in the record, that it had been prepared for filing at the scheduled October 11, 1979, calendar conference in the event that defendant chose to proceed to trial. In any event, the prosecution does not dispute defendant's claim that it was never actually filed.

"*DEFENDANT:* I'll have to take it then.
"*THE COURT:* All right, fill out a guilty plea form.

\*    \*    \*

"Now, if you are innocent of this breaking and entering, go to trial. I can't tell you more strongly. If you are not guilty of the B & E, you should go to trial.

"If you are guilty, you better grab that plea because the prosecutor filed this thing and immediately gives you a 30-year ticket."

Defendant then pled guilty, and received the agreed upon sentence.

On appeal, defendant claims his plea was involuntary because it was the result of an illusory plea agreement. Specifically, defendant claims he received no benefit from the prosecution's promise to forego filing a supplemental information because, under *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979), the prosecution had lost the right to file a supplemental information at the time the promise was made. Because all of the operative facts in the instant case occurred after the date that *Fountain* was decided, the issue of *Fountain's* retroactive application is not involved.[2]

Concerning the time in which a supplemental information must be filed, the *Fountain* decision begins by restating the long standing rule that "[a] prosecutor who knows a person has a prior felony record must promptly proceed, if at all, against the person as an habitual offender." *People v Fountain, supra,* 98. See *People v Hatt,* 384 Mich 302; 181 NW2d 912 (1970), *People v Stratton,* 13 Mich App 350; 164 NW2d 555 (1968). Under this rule, the issue of whether a particular filing was sufficiently "prompt" traditionally depended on when

---

[2] Compare *People v Mohead,* 98 Mich App 612; 295 NW2d 910 (1980) (no retroactive application), with *People v Reese,* 97 Mich App 785; 296 NW2d 172 (1980) (limited retroactive application).

the prosecution became aware of a defendant's prior convictions, whether there was good cause for the delay, and whether the delay substantially prejudiced the defendant's rights. *People v Martin,* 100 Mich App 447; 298 NW2d 900 (1980). See *People v Hendrick,* 398 Mich 410; 247 NW2d 840 (1976), *People v Marshall,* 41 Mich App 66; 199 NW2d 521 (1972). Near the end of the per curiam opinion in *Fountain,* however, the Court went further in indicating what was required to satisfy the prompt filing requirement:

"Here the prosecutors must be presumed to have known of the defendants' prior felony records because their respective offices prosecuted the prior felonies. *The habitual offender charges should have been filed with the information which charged the last felony to provide fair notice to the accused and avoid an appearance of prosecutorial impropriety.*"[3] *People v Fountain, supra,* 99. (Emphasis added.)

It is this language on which defendant in the instant case relies. He argues that because no supplemental information was filed with the information charging the latest offense the right to file an habitual offender charge was waived and the prosecution gave up nothing when it agreed to refrain from bringing such a charge. *People v Johnson,* 86 Mich App 77; 272 NW2d 200 (1978).

Resolution of the instant case is complicated by the ambiguity of this new language. On the one hand the facts and circumstances of the case before us indicate that the concerns underlying the simultaneous filing language, fair notice and avoid-

---

[3] Defendant's prior felony convictions were handled by the same prosecutor's office involved in the instant case, so that the prosecution is presumed to have knowledge of the prior convictions. *People v Fountain, supra,* 99.

ance of the appearance of prosecutorial impropriety, are not present. The notice indicating an intent to file a supplemental information was filed the day after the information charging the latest offense was filed. It does not appear that plea negotiations or other such activity took place during this interval. In our opinion, this was sufficient to satisfy the purposes of *Fountain's* simultaneous filing requirement under the circumstances of the instant case. On the other hand, the Supreme Court may have intended to announce in *Fountain* a prophylactic rule obviating the necessity of appellate inquiry into the facts and circumstances of every case. See *People v Mohead,* 98 Mich App 612, 622; 295 NW2d 910 (1980). After consideration of these possibilities, and in the absence of a clear directive that the simultaneous filing rule was intended to apply in cases where the purposes of the rule were not offended, we decline to hold that the prosecution in the instant case had lost the right to proceed against defendant as an habitual offender at the time of the plea agreement. Application of the rule to the case at bar would serve no legitimate end as the procedure followed in the instant case served the same purposes that simultaneous filing would.[4]

We believe we are at liberty to reach this result because the Court in *Fountain* did not clearly mandate absolute compliance. The language used in *Fountain* leaves doubts as to what was actually intended. The Court did not, for example, state a simultaneous filing requirement in the form of a

[4] Although the Chief Justice's concurring opinion in *Fountain* indicates that simultaneous filing is required even in the absence of any allegation or showing of prejudice, that situation may be distinguished from the situation in the instant case, where the procedure utilized fully complied with the purposes of a simultaneous filing requirement.

rule.[5] Instead, the Court noted that in the case before it the habitual offender charges "should have" been filed simultaneously with the information charging the latest felony. While the Chief Justice's concurring opinion restates the simultaneous filing language in a way that suggests more universal application, she too uses the word "should". Accordingly, the Court did not clearly foreclose the possibility that alternative procedures, such as that utilized in the instant case, could equally serve the announced purposes of simultaneous filing. It may be that the Supreme Court intended to announce a prophylactic rule that would apply in all cases regardless of whether the problems which necessitated the rule were equally avoided by an alternative procedure. We invite the Supreme Court to clarify the scope of the simultaneous filing language in *Fountain,* but in the absence of a clearer statement requiring simultaneous filing in all cases, we are not convinced that such a prophylactic rule was intended. Accordingly, defendant's plea agreement in the instant case was not illusory.

Affirmed.

Judge KAUFMAN concurs in the resolution of the issue raised on appeal.

---

[5] Compare the Court's language in *Fountain* with that used in another case clearly announcing the adoption of a new rule:

"However, we are persuaded that any possible future danger of coercive effect by the giving of an *Allen*-type charge is one which can and should be avoided. An analysis of recent cases and commentaries confirms our belief that the better practice is to be found in the recommended ABA jury standard 5.4.

"Therefore, prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court. Any substantial departure therefrom shall be grounds for reversible error." *People v Sullivan,* 392 Mich 324, 342; 220 NW2d 441 (1974).