PEOPLE v YOUNG

Docket Nos. 64444, 64563. Decided February 23, 1981. On application by the parties for leave to appeal the Supreme Court, in lieu of granting leave to appeal, affirmed the decision of the Court of Appeals.

Donald Young was convicted by a jury in Recorder's Court of Detroit, George W. Crockett, Jr., J., of manslaughter and was sentenced on March 25, 1977. Seven weeks later the defendant was charged in a supplemental information as being a fourth felony habitual offender. The trial court found that one of the prior convictions was invalid for habitual offender purposes, and a jury found the defendant guilty as a third offender. The Court of Appeals, Bashara, P.J., and N. J. Kaufman and Van Valkenburg, JJ., vacated the habitual offender conviction and reinstated the defendant's sentence for manslaughter in an unpublished per curiam opinion, relying on a decision of the Supreme Court, announced August 28, 1979, requiring a prosecutor who knows that an accused person has a prior felony record to proceed against the person as an habitual offender before conviction on the current charge (Docket No. 77-5133). The parties apply for leave to appeal. In a per curiam opinion signed by Chief Justice Coleman and Justices Williams, Fitzgerald, and Moody, the Supreme Court held:

The dispositive issue in this case is whether the Supreme Court decision concerning prompt procedure in habitual offender cases should be given retroactive or prospective application. The three key factors in deciding the issue are: the purpose of the new rule, the general reliance on the old rule, and the effect of retroactive application of the new rule on the administration of justice. The primary purpose of the rule is to provide fair notice to the accused of the supplemental charge so as to avoid the appearance of prosecutorial impropriety. It would not serve that purpose to apply the rule to past conduct. The decision is based on the Court's supervisory powers over the practices and procedures used in the courts. A new rule of procedure which does not affect the integrity of the fact-finding process should be given prospective effect. Furthermore, the former practice of filing the habitual offender information only

after conviction of the current felony was widespread. Retroactive application of the new policy would have an adverse effect on the administration of justice. Therefore, the rule requiring promptness in charging the defendant as an habitual offender is applicable to cases pending on appeal on August 28, 1979, the date of its decision, provided the issue was raised during the pendency of the appeal, and in cases in which the original trial or guilty plea hearing concluded 20 days after August 28, 1979. Because the defendant in this case raised the issue in his appeal, which was pending in the Court of Appeals on that date, the decision of the Court of Appeals is affirmed.

Affirmed.

Justice Levin, joined by Justice Kavanagh, concurred in the disposition but he would not limit the application of the rule to cases in which the issue was raised. The rule, rather than innovating a new procedure, reaffirmed a procedure announced by the Court of Appeals in 1968 which the Supreme Court approved in 1970. Although in the interim other panels of the Court of Appeals took the position that the procedure was not mandatory, the directive announced in 1979 was not novel. Prosecutors could have determined that the procedure approved in 1970 might be unequivocally reaffirmed, as it subsequently was, and could have complied with the prescribed procedures at any time without surrendering any legitimate tactical advantage or assuming any burden. Since prosecutors would not have been prejudiced or burdened by compliance with the procedures, and non-compliance may result in prejudice to the accused, the balance favors retroactivity. The Court should not, at the expense of defendants, protect prosecutors from the consequences of their failure to guard against the eventuality that the procedures might some day be made mandatory. In most cases, the prosecutor will have had notice from his own records or from other sources of the defendant's prior convictions. Justice Levin would, therefore, establish a policy of vacating the habitual offender charge and reinstating the original unenhanced sentence, or remanding for resentencing, in any case where a defendant with prior felony convictions was not charged as an habitual offender until after conviction of the current felony, subject to the prosecutor's right to show that he did not know, and should not have been on notice, of the prior convictions.

Justice Ryan concurred in the result. Prosecutors have been on notice since 1970 that the procedure at issue is the approved one for proceeding against alleged habitual offenders.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Lynn Chard)* for defendant.

PER CURIAM. Defendant was tried for second-degree murder in Detroit Recorder's Court. On March 18, 1977, the jury found him guilty of manslaughter. The trial judge sentenced defendant to 10 to 15 years in prison on March 25, 1977. ·

Defendant subsequently filed a claim of appeal. The Court of Appeals granted the prosecutor's motion to affirm on May 11, 1978, and this Court denied defendant's request for review on March 29, 1979. The validity of defendant's manslaughter conviction is not at issue today.

On May 19, 1977, seven weeks subsequent to defendant's sentencing, the prosecutor filed a supplemental information charging defendant as a fourth felony habitual offender pursuant to MCL 769.12; MSA 28.1084.

On October 7, 1977, a jury found defendant's March 18, 1977, manslaughter conviction to be his third felony and found him guilty as a third offender, MCL 769.11; MSA 28.1083.[1] The trial judge sentenced defendant to 20 to 30 years for the habitual offender charge which enhanced the manslaughter sentence of 10 to 15 years.

The Court of Appeals in an unpublished per curiam opinion vacated defendant's habitual offender conviction and reinstated the 10-to-15-year manslaughter sentence. The Court relied upon our

---

[1] Pursuant to defendant's motion, one of the prior convictions was found invalid for habitual offender purposes.

holding in *People v Fountain,* 407 Mich 96, 98-99;
282 NW2d 168 (1979).

In *Fountain,* we held:

"A prosecutor who knows a person has a prior felony
record must promptly proceed, if at all, against the
person as an habitual offender. *People v Hatt,* 384 Mich
302; 181 NW2d 912 (1970); *People v Stratton,* 13 Mich
App 350; 164 NW2d 555 (1968). The prosecutor is not
foreclosed from proceeding against a person as an habit-
ual offender after conviction on the current offense
provided he is unaware of a prior felony record until
after the conviction. MCL 769.13; MSA 28.1085. The
only recognized exception to this rule is when the delay
is due to the need to verify out-of-state felony convic-
tions based on the 'rap sheet'. *People v Hendrick,* 398
Mich 410; 247 NW2d 840 (1976)."[2]

The dispositive issue in this case is whether the
holding in *People v Fountain* should be given
retroactive or prospective application.

"When the issue of retroactivity arises, the case
of *Linkletter v Walker,* 381 US 618; 85 S Ct 1731;
14 L Ed 2d 601 (1965), is often used to determine a
solution." *People v Rich,* 397 Mich 399, 402-403;
245 NW2d 24 (1976); *People v Hampton,* 384 Mich
669; 187 NW2d 404 (1971). The three key factors
in the *Linkletter* test are: (a) the purpose of the
new rule; (b) the general reliance on the old rule;
and (c) the effect of retroactive application of the
new rule on the administration of justice.

It is clear that the primary purpose of the rule

---

[2] This Court in *Fountain* noted that the prosecutors must be pre-
sumed to have known of the defendants' prior felony records because
their offices prosecuted the prior felonies.

In the case at bar, defendant's prior convictions were in Recorder's
Court for the City of Detroit. The prosecutors must be presumed to
have known of defendant's record since their offices prosecuted the
cases.

established in *People v Fountain,* is to provide fair
notice to the accused of the supplemental charge
so as to avoid the appearance of prosecutorial
impropriety. As noted in the concurring opinion in
*Fountain,* the decision requiring the prosecutor to
proceed in this manner is based on this Court's
supervisory powers over the practices and proce-
dures used in our courts.

When a decision of this Court involves a rule
which concerns the ascertainment of guilt or inno-
cence, retroactive application may be appropriate.
*People v Hampton, supra.* Conversely, a new rule
of procedure adopted by this Court which does not
affect the integrity of the fact-finding process
should be given prospective effect.

We consider the latter two *Linkletter* factors
together because the amount of past reliance will
often have a profound effect upon the administra-
tion of justice.

The former practice of filing the habitual of-
fender information only after conviction on the
current felony was widespread. Retroactive appli-
cation of the *Fountain* policy would have an ad-
verse effect on the administration of justice. The
rule established in *Fountain* is procedural in na-
ture, mandating how a prosecutor must proceed
when charging a defendant as an habitual offender
pursuant to a supplemental information. The guilt
or innocence of the accused is not at issue. Since
the purpose of the rule is to avoid an appearance
of prosecutorial impropriety, it would not serve
that purpose to apply the rule to past conduct.

We conclude that *People v Fountain* is applica-
ble to cases pending on appeal on August 28, 1979,
the date of decision in *People v Fountain,* provided
the issue was raised during the pendency of the
appeal; and in cases, the original trial or guilty

plea hearing of which concluded 20 days after the date of decision in *People v Fountain*.[3]

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we affirm the Court of Appeals decision which vacated defendant's habitual offender conviction and reinstated the conviction and 10-to-15-year sentence for manslaughter.[4]

COLEMAN, C.J., and WILLIAMS, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred.

LEVIN, J. *(concurring and dissenting).* I agree with the Court that the rule stated in *People v Fountain*[1] should be applied in cases pending on appeal on the date *Fountain* was decided, and therefore concur in the Court's disposition of this case.

I write separately to indicate my differences with some aspects of the Court's analysis and to state that I would not limit the application of that rule to cases in which the issue was raised. I would vacate the habitual offender charge and reinstate the original sentence or remand for resentencing in any case where a defendant with prior felony convictions was not charged as an habitual offender until after conviction of the current felony, subject to the prosecutor's right to show that he did not know, and should not have been on notice, of the prior convictions.

---

[3] Defendant Donald Young raised the *Fountain* issue in his appeal, which was pending in the Court of Appeals when we decided *Fountain*.

[4] Defendant asserts that reinstatement of the 10-to-15-year sentence for manslaughter is error due to alleged defects in that sentence. He argues that the proper remedy was a remand for resentencing.

The Court of Appeals did not err and, as noted, we affirm their decision. Defendant is directed to *Guilty Plea Cases*, 395 Mich 96, 137; 235 NW2d 132 (1975), for the proper procedure to follow in challenging the sentence.

[1] *People v Fountain*, 407 Mich 96; 282 NW2d 168 (1979).

*People v Fountain,* rather than innovating a new procedure, reaffirmed a procedure announced by the Court of Appeals in 1968 and approved by this Court in 1970. Although in the interim other Court of Appeals panels took the position that that procedure was not mandatory, the directive laid down in *Fountain* was not novel. Prosecutors could have determined that the procedure approved in 1970 might be unequivocally reaffirmed, as it was subsequently in *Fountain,* and could have complied with the prescribed procedures at any time without surrendering any legitimate tactical advantage or assuming any burden. Since prosecutors would not have been prejudiced or burdened by compliance with those procedures, and noncompliance may result in prejudice to the accused, the balance favors retroactivity. This Court should not, at the expense of defendants, protect prosecutors from the consequences of their failure to guard against the eventuality that those procedures might someday be made mandatory.

I

The opinion of the Court in *Fountain* states:

"A prosecutor who knows a person has a prior felony record must promptly proceed, if at all, against the person as an habitual offender. *People v Hatt,* 384 Mich 302; 181 NW2d 912 (1970); *People v Stratton,* 13 Mich App 350; 164 NW2d 555 (1968). The prosecutor is not foreclosed from proceeding against a person as an habitual offender after conviction on the current offense provided he is unaware of a prior felony record until after the conviction. MCL 769.13; MSA 28.1085. The only recognized exception to this rule is when the delay is due to the need to verify out-of-state felony convic-

tions based on the 'rap sheet'. *People v Hendrick,* 398 Mich 410; 247 NW2d 840 (1976)."[2]

The opinion of the Court does not purport to establish a new rule. The citations to *People v Hatt* and *People v Stratton* suggest that the stated rule originated in or was articulated in those cases. The reference to *People v Hendrick* as establishing the "only recognized exception to this rule" indicates that the rule antedates *Hendrick.*

Four sections of the Code of Criminal Procedure address the procedures to be utilized by a prosecutor in charging a defendant as an habitual offender in order to obtain enhancement of the defendant's sentence upon conviction of a further felony.[3]

In *People v Stratton,*[4] decided in 1968, the Court of Appeals, reading those sections together and finding guidance in a 1940 decision of this Court,[5] declared that "they contemplate[d] two separate situations and procedures to be followed when the prosecutor desires to make possible the meting out of an increased penalty * * *. The procedure set forth in § 13 [MCL 769.13; MSA 28.1085] is to be followed whenever it appears to the prosecutor 'after conviction' of the current charge that the felon has a prior felony record. However, where it appears to the prosecutor before conviction of the current charge that the accused person is a prior

---

[2] *Id.,* pp 98-99.

[3] MCL 769.10-769.13; MSA 28.1082-28.1085.

[4] *People v Stratton,* 13 Mich App 350, 356; 164 NW2d 555 (1968).

[5] *In re Brazel,* 293 Mich 632, 641, 640; 292 NW 664 (1940), declared that what is now MCL 769.13; MSA 28.1085 "was added to enable the prosecutor to file his supplemental information where he discovers such prior convictions [after filing of the original information]" and that it was "not necessary to file a supplemental information where said previous convictions are known to the prosecuting attorney at the time of the filing of the information".

felon, the accused person is to be informed against as a prior offender prior to conviction on the current charge; the procedure set forth in § 13 need not be followed". (Emphasis in original.)

In *People v Hatt*,[6] decided in 1970, this Court declared that the procedures for dealing with a recidivistic charge, as delineated in *Stratton,* "are approved".

In *People v Marshall*,[7] decided in 1972, the Court of Appeals reversed the defendant's habitual offender conviction on the ground that the prosecutor's failure to file the supplemental information until after the period allowed to take a timely appeal from the most recent conviction denied the defendant due process of law. Although granting defendant relief on this basis, *Marshall,* without mentioning *Hatt,* declared non-decisionally that *Stratton* was "not controlling" on the question "whether the prosecutor could file his supplemental information after the conviction on the then pending current charge, where the prosecutor had knowledge of the prior convictions", because that specific question was not before the *Stratton* Court. *Marshall* also stated that *Stratton* did not "make it mandatory on the part of the prosecutor to proceed against an accused as a subsequent offender prior to conviction", and that "the prosecutor has discretion to file a supplemental information under the habitual criminal act after conviction, and is not limited to filing such supplemental information prior to conviction of a current charge, where he has knowledge of the previous conviction."

In *People v Hendrick*,[8] decided in 1974, the

---

[6] *People v Hatt,* 384 Mich 302, 309; 181 NW2d 912 (1970).

[7] *People v Marshall,* 41 Mich App 66, 71-73; 199 NW2d 521 (1972).

[8] *People v Hendrick,* 52 Mich App 201, 209; 217 NW2d 112 (1974).

Court of Appeals followed *Marshall* in rejecting the argument that a supplemental information filed after conviction should have been quashed, saying "[d]efendant's reliance in *[sic]* the *Brazel [In re Brazel,* 293 Mich 632; 292 NW 664 (1940)], *Hatt* and *Stratton* line of cases is misplaced". This Court granted leave to appeal. The prosecutor defended the late filing on the ground that the only information about defendant's prior convictions available before trial came from an FBI "rap sheet" upon which he chose not to rely without further investigation. This Court's 1976 opinion in *Hendrick* noted *Stratton, Hatt, Marshall* and other cases, but rather than resolving any inconsistency, held only that the prosecutor had acted properly in the case at hand;[9] it purported neither to state nor to change a rule of general application limiting the time within which a prosecutor could file a supplemental information.

An overview of the case law prior to *Fountain* shows:

1) One Court of Appeals decision *(Stratton),* approved by this Court *(Hatt),* stating that a supplemental information against a felon whose prior convictions are known is to be filed before conviction on the current charge;

2) One Court of Appeals decision *(Marshall),* followed in two other Court of Appeals decisions,[10] one of which was affirmed in a decision which did

---

[9] *People v Hendrick,* 398 Mich 410; 247 NW2d 840 (1976).

[10] *People v Laslo,* 78 Mich App 257; 259 NW2d 448 (1977), relying on *Marshall* and the Court of Appeals decision in *Hendrick,* summarily rejected the defendant's contention that the prosecutor could not file a supplemental habitual offender information after the defendant's most recent felony conviction. The Court of Appeals opinion in *People v Fountain (After Remand),* 77 Mich App 71, 75; 257 NW2d 671 (1977), although reaching the same conclusion, has not been counted as a third decision because this issue was not specifically discussed.

not impugn *Stratton* or *Hatt,* declaring that the prosecutor may file a supplemental information after the most recent conviction although he previously had knowledge of the prior convictions.

## II

When decisions of the Court of Appeals are in conflict, both lines of decision have precedential value until this Court resolves the conflict. Trial judges and other Court of Appeals panels are free to follow whichever line of decision they find most persuasive, and advocates cannot be faulted for urging the percipience of the cases most favorable to them. Nevertheless, a litigant who relies on a particular line of decision runs the risk that this Court may adopt a different view.

Judicial decisions are normally given retroactive application.[11] *Linkletter,*[12] reflecting concerns about the effect of unvarying retroactivity upon the orderly administration of justice, introduced an analysis which sometimes permits courts to avoid or limit the retroactive application of new criminal procedural guarantees. *Linkletter's* analysis has in the main been applied to new rules whose adoption prosecutors resisted as hampering the effective prosecution or punishment of offenders—*e.g.,* rules requiring the exclusion of evidence. In general, the retroactivity cases do not present situations where prosecutors could, in advance of the

---

[11] To be sure, the assumption underlying this traditional approach is that a court's exposition of substantive law expresses its discovery of the true and correct law, and decisions respecting matters of practice and procedure, other than those found to be constitutionally required, are arguably distinguishable. Nevertheless, just as a new rule of substantive law may, for reasons of policy, be denied retroactive application so, too, for reasons of policy, a decision respecting a procedural matter may be accorded full retroactivity.

[12] *Linkletter v Walker,* 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965).

new rule's announcement, have shielded themselves, without hindering the prosecution or punishment of offenders, by the simple expedient of filing one document sooner rather than later.

A prosecutor faced with a defendant's claim that a prosecution was barred by double jeopardy principles could hardly be expected to abandon a tenable legal position to the contrary. Nor could a prosecutor be expected to accede to a defendant's request for favorable jury instructions—*e.g.,* that he was entitled to instruction on a lesser offense—where he could make a tenable argument to the contrary, for in doing so he might surrender a legitimate tactical advantage. A prosecutor might also wish to contest a defendant's assertion that he was entitled to a hearing in a particular context, since recognition of such a right would increase the burdens on his office. But a reasonable prosecutor confronted with *Stratton, Hatt, Marshall* and *Hendrick* could easily have concluded that, while there was some degree of uncertainty as to whether the procedures delineated in *Stratton* were mandatory, observing them would be the prudent and preferable course because this Court might at some point mandate their observance.[13] Compliance would have entailed no more than the prompt preparation and filing of a supplemental information. After *Stratton* and *Hatt,* but before *Fountain,* a prosecutor who filed a supplemental

[13] In *Robinson v Neil,* 409 US 505, 510; 93 S Ct 876; 35 L Ed 2d 29 (1973), the United States Supreme Court noted in upholding the retroactive application of its decision that double jeopardy guarantees took precedence over the "dual sovereignty" doctrine that that decision could not be said "to have marked a departure from past decisions of this Court" and that "the justifiability of the State's reliance on lower court decisions supporting the dual sovereignty analogy was a good deal more dubious than the justification for reliance that has been given weight in our *Linkletter* line of cases". The same could be said for our decision in *Fountain* and for prosecutorial reliance on *Marshall.*

information promptly would have given up nothing but whatever advantage might have been gained in delaying, or withholding notice to the defendant of, a decision to charge him as an habitual offender.

*Fountain* reflects this Court's conclusion that a supplemental information should be promptly filed "to provide fair notice to the accused and avoid an appearance of prosecutorial impropriety".[14] Belated filing of the supplemental information entails a substantial possibility of prejudice to the defendant. The potential disadvantage to the defendant, who may lose the ability to make fully informed decisions, is considerably greater than the disadvantage to the prosecutor in being required to make an early decision.

I conclude that the balance of equities favors the retroactive application of the rule stated in *Fountain*. Prosecutors were aware that the view expressed in *Stratton* and *Hatt* had the support of some Court of Appeals judges and justices of this Court. They cannot properly be heard to complain because they failed to guard against the eventuality that filing of a supplemental information after conviction might someday be disapproved.

I would not limit the application of the rule stated in *Fountain* to defendants who have raised the issue. One could say that defendants, like prosecutors, should have been aware of the state of the law and were obligated to preserve an objection to tardy filing of an habitual offender charge.

---

[14] *People v Fountain, supra,* 407 Mich 99.

Fairness requires notice to the offender that he may face enhanced punishment because this prospect may affect decisions he makes in defending against or pleading guilty to the latest charge. Moreover, allowing habitual offender charges to be filed after conviction permits a dissatisfied prosecutor to seek to enhance the punishment of an offender who has been convicted of a lesser charge or who has received a sentence the prosecutor regards as inadequate.

But the rationale underlying the requirement of issue preservation at the trial level—calling the matter to the court's attention to allow error to be corrected or avoided—is inapplicable in this context, since neither the judge nor the prosecutor could turn back the clock to permit earlier filing of a supplemental information filed after conviction. And a defendant should not be subjected to enhanced punishment because his appellate counsel overlooked a determinative issue or failed to raise it on the unwarranted assumption that *Marshall* took precedence over *Stratton*.[15]

The rule stated in *Fountain* can, without remand, easily be applied by this Court—to requests for review[16] as well as applications for leave to appeal—and by the Court of Appeals regardless of whether the issue has been raised.

In most cases, the prosecutor will have had notice from his own records or other sources of the defendant's prior convictions. I would therefore establish a policy of vacating the habitual offender charge and reinstating the unenhanced sentence, if any, or remanding for resentencing, in any case where a defendant with prior felony convictions was not charged as an habitual offender until after conviction on the current felony, subject to the prosecutor's right to show that he did not know, and should not have been on notice, of the prior convictions.

KAVANAGH, J., concurred with LEVIN, J.

[15] Some omissions of counsel are serious enough to justify a court in granting a defendant relief from the serious mistake of his counsel without requiring a showing that he was on the whole deprived of the effective assistance of counsel. *People v Degraffenreid,* 19 Mich App 702, 716-717; 173 NW2d 317 (1969), and cases there cited; *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976). In the instant case, relief can be granted without the burden or expense of a new trial.

[16] See Administrative Order 1977-4, 400 Mich lxvii.

RYAN, J. I concur in the result reached by the majority.

In *People v Hatt,* 384 Mich 302; 181 NW2d 912 (1970), this Court declared that "[t]he procedures for dealing with a recidivistic charge, as delineated by Judge LEVIN in *People v Stratton* [13 Mich App 350; 164 NW2d 555 (1968)], are approved". Thus prosecutors have been on notice, at least since 1970, that the *Stratton* procedure, now come to be known as the *"Fountain* policy" was the preferred, correct, indeed "approved" procedure for proceeding against alleged habitual offenders.