# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

PEOPLE v POOLE

Docket No. 166813. Argued January 22, 2025 (Calendar No. 1). Decided April 1, 2025.

John A. Poole was convicted in 2002 of first-degree murder, MCL 750.316; being a felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony, MCL 750.227b, following a jury trial in the Wayne Circuit Court. Poole was 18 years old at the time of the murder and had been paid by his uncle to kill the victim. The trial court, Bruce U. Morrow, J., imposed a mandatory sentence on defendant of life imprisonment without the possibility of parole. The Court of Appeals, OWENS, P.J., and FITZGERALD and SCHUETTE, JJ., affirmed defendant's convictions in an unpublished per curiam opinion, and the Michigan Supreme Court denied defendant's application for leave to appeal. 476 Mich 863 (2006). Defendant moved for relief from judgment multiple times, and the Supreme Court previously granted defendant's application for leave to appeal following the United States Supreme Court's decisions in *Miller v Alabama*, 567 US 460 (2012), and *Montgomery v Louisiana*, 577 US 190 (2016), to determine whether those decisions should be applied to defendants who were over the age of 17 when the decisions were issued. 507 Mich 993 (2021). After the Supreme Court's decision in *People v Parks*, 510 Mich 225 (2022), holding that the Michigan Constitution's prohibition on "cruel or unusual punishment" supported extending *Miller*'s prohibition on mandatory life sentences for offenders 17 years old and younger to 18-year-olds, the Supreme Court remanded this case to the Court of Appeals to determine whether defendant was entitled to relief under *Parks*. 510 Mich 851 (2022). The Court of Appeals, LETICA, P.J., and BORRELLO and RIORDAN, JJ., held that *Parks* applied retroactively under a state retroactivity analysis and that the holding in *Parks* was substantive, rather than procedural, in nature. ___ Mich App ___ (January 18, 2024) (Docket No. 352569). The Court of Appeals vacated defendant's sentence and remanded to the trial court pursuant to MCL 769.25. The prosecution applied for leave to appeal in the Supreme Court, arguing that the Court of Appeals erred by concluding that *Parks* applied retroactively. The Supreme Court granted the application. 513 Mich 1144 (2024).

In a unanimous opinion by Justice BERNSTEIN, the Supreme Court *held*:

Under a state retroactivity analysis, the holding in *Parks*—that mandatory sentences of life without parole violated the prohibition in Const 1963, art 1, § 16 against "cruel or unusual punishment" for juvenile homicide offenders who were 18 years old at the time of the offense—applied retroactively because *Parks* announced a substantive rule. To the extent that the state retroactivity analysis in *People v Carp*, 496 Mich 440 (2014), survived *Montgomery*, it was overruled.

1. Under *Linkletter v Walker*, 381 US 618 (1965), and *People v Hampton*, 384 Mich 669 (1971), this Court has stated that there are three factors to consider when determining whether an opinion should be applied retroactively: (1) the purpose of the new rule, (2) the general reliance on the old rule, and (3) the effect on the administration of justice. The Court affirmed the use of the *Linkletter-Hampton* factors in *People v Gay*, 407 Mich 681 (1980), but noted that the factors played a predominant role when the court was considering procedural rules, whereas when substantive rights of a fundamental nature were affected, they were normally to be accorded retrospective application. In cases involving substantive rules, the *Linkletter-Hampton* factors may be addressed but will have a determinative effect only in rare instances. Although the United States Supreme Court abandoned the *Linkletter* test in *Teague v Lane*, 489 US 288 (1989), Michigan courts continued to apply the *Linkletter-Hampton* factors to assess retroactivity at the state level after *Teague*.

2. After the United States Supreme Court's decision in *Miller* concluding that mandatory sentences of life without parole for juveniles violated the Eighth Amendment's prohibition on cruel and unusual punishment, the Michigan Supreme Court determined in *Carp* that *Miller* announced a procedural rule that did not apply retroactively under either the federal retroactivity analysis or under the state test for determining retroactive application. However, the United States Supreme Court later issued *Montgomery*, which held that *Miller*'s holding was substantive and applies retroactively.

3. Because this case involved the application of a holding grounded in the Michigan Constitution, the retroactivity analysis in *Gay* was controlling. Under *Gay*, the first question at issue was whether the holding in *Parks* was procedural or substantive. In *Montgomery*, the United States Supreme Court explained that substantive rules set forth categorical guarantees that place certain criminal laws and punishment beyond the state's power to impose, whereas procedural rules are designed to enhance the accuracy of a conviction or sentence by regulating the manner of determining a defendant's culpability. The United States Supreme Court applied this standard in *Montgomery* to conclude that *Miller* announced a substantive rule with retroactive effect in cases on collateral review. Although the *Montgomery* analysis was not binding on the Michigan Supreme Court, it was persuasive in this case, given that the Court's holding in *Parks* was an extension of *Miller*, though grounded in the Michigan Constitution's "cruel or unusual punishment" provision.

4. As noted in *Gay*, the *Linkletter-Hampton* factors may have a determinative effect in the rare case in which substantive rights are affected. Therefore, an examination of the factors was necessary to determine whether *Parks* applies retroactively. Given its potential application here, it was necessary to consider *Carp*'s state retroactivity analysis. In *Carp*, the Court held that the *Linkletter-Hampton* factors did not warrant a retroactive application of *Miller*. But *Carp*'s federal retroactivity analysis was vacated by *Montgomery*, and although *Montgomery* did not directly affect *Carp*'s state retroactivity analysis, it rendered this part of its holding toothless, given that it could not be *more* limited than the result obtained under the broader federal test. To the extent that the state retroactivity analysis in *Carp* survived *Montgomery*, it was overruled. Further, *Carp* erred in its analysis of the *Linkletter-Hampton* factors. *Carp* held that the first factor was to be given the most weight in a court's consideration of the factors and that only new rules of procedure that implicate the guilt or innocence of a defendant were entitled to retroactive application. In coming to this conclusion, however, *Carp* relied on caselaw, including *Hampton*, that did not

support its understanding of the first factor. Rather, when properly understood, *Hampton* merely surveyed relevant caselaw from the United States Supreme Court to determine whether that Court had established a pattern regarding when retrospective application was appropriate. As part of its survey, the *Hampton* Court noted that the United States Supreme Court had applied decisions retroactively when the guilt or innocence of the defendant was at stake and prospectively when this was not the case. However, this was merely a survey and did not indicate that *Hampton* stood for the proposition that the first *Linkletter-Hampton* factor only favors retroactive application when a defendant's guilt or innocence is at stake. Accordingly, under a proper understanding of *Hampton*, it was clear that *Miller* favored retroactive application. Given that *Miller* held that juveniles should not be barred from the possibility of rehabilitation by the imposition of a mandatory life sentence and that only the rare juvenile would be found irredeemable and deserving of a life sentence, the Court in *Carp* incorrectly held that the first *Linkletter-Hampton* factor did not favor retroactive application. In discussing the second and third factors, *Carp* focused on the effect of the new rule on prosecutors. Instead, the focus should be on those defendants who received a mandatory sentence of life without parole for homicide offenses they committed as juveniles but whose cases were finished on direct review when *Miller* was decided. Reliance on pre-*Miller* caselaw would be detrimental to this class of defendants. Accordingly, *Carp* erred in its application of the second factor. Regarding the third factor, *Carp* correctly noted that there is a burden on the administration of justice to the extent that resentencing hearings require judicial resources, but this factor was outweighed by the consideration of the other two factors and by the conclusion that *Parks* announced a substantive rule. Next in the stare decisis inquiry was whether *Carp* defied practical workability, whether reliance interests would work an undue hardship if it were overturned, and whether changes in the law or facts no longer justified it. While *Carp* did not defy practical workability, there has been no significant reliance on *Carp*, given that it was reversed on federal grounds not long after it was decided, and *Montgomery* was a meaningful change in the law that entirely undermined *Carp*'s substantive holding. Accordingly, the stare decisis doctrine did not prevent *Carp*'s state retroactivity analysis from being overturned.

5. The substantive analysis of the *Linkletter-Hampton* factors that supported the conclusion that *Carp* should be overruled also supported the conclusion that *Parks* should be given retroactive application. The first factor favored retroactive application because, like *Miller*, *Parks* declared mandatory life-without-parole sentences unconstitutional for an entire class. The second factor also favored retroactive application because reliance on pre-*Parks* caselaw would be detrimental to the class of defendants who received mandatory sentences of life without parole for offenses committed when they were 18 years old, but whose cases were finished on direct review when *Parks* was decided. The third factor did not favor retroactive application of *Parks*, given the use of judicial resources and the impact of resentencing hearings on those affected by the crimes committed by the affected class of defendants. On balance, however, the analysis of the *Linkletter-Hampton* factors reaffirmed the conclusion that *Parks* was entitled to retroactive application as a substantive rule under *Gay*.

Affirmed and remanded.

Justice THOMAS did not participate because of her prior involvement in this case.

# OPINION

Chief Justice:
    Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

FILED  April 1, 2025

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

No. 166813

JOHN ANTONIO POOLE,

    Defendant-Appellee.

---

BEFORE THE ENTIRE BENCH (except THOMAS, J.)

BERNSTEIN, J.

This case concerns the application of *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022); specifically, whether *Parks* applies retroactively to cases where the period for direct review had expired when *Parks* was decided.  Under our state retroactivity principles, we hold that it does.  We therefore remand this case to the trial court for resentencing proceedings pursuant to MCL 769.25a.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The underlying facts of this case have not changed since it was last before us. We previously summarized the relevant facts as follows:

> [D]efendant, John Antonio Poole, was convicted of first-degree murder, MCL 750.316, after his older uncle paid him to kill the victim, and defendant was given a mandatory sentence of life imprisonment without the possibility of parole. Defendant was 18 years old at the time of the murder. The Court of Appeals affirmed his convictions on direct appeal, and we denied leave to appeal. *People v Poole*, unpublished per curiam opinion of the Court of Appeals, issued December 5, 2005 (Docket No. 244023), lv den 476 Mich 863 (2006). Defendant has twice previously moved for relief from judgment, pursuant to MCR 6.500. This is his third such motion. Defendant challenges the validity of his mandatory life-without-parole sentence in light of *Miller v Alabama*, 567 US 460[; 132 S Ct 2455; 183 L Ed 2d 407] (2012), which was determined to be retroactively applicable to cases on collateral review in *Montgomery v Louisiana*, 577 US 190[; 136 S Ct 718; 193 L Ed 2d 599] (2016). The trial court returned his motion, determining that *Miller* was not retroactively applicable to defendant's case. The Court of Appeals dismissed defendant's delayed application for leave to appeal, because defendant improperly sought to appeal the rejection of a successive motion for relief from judgment, citing MCR 6.502(G). [*People v Poole*, 510 Mich 851, 851 (2022).]

We previously granted defendant's application for leave to appeal, asking among the questions to be briefed whether *Miller*, which held that mandatory life without parole for a juvenile convicted of a homicide offense constitutes cruel and unusual punishment as prohibited by the Eighth Amendment, should be extended to individuals like defendant who were over 17 years old at the time they committed their homicide offenses. *People v Poole*, 507 Mich 993, 993-994 (2021). Following oral argument, we held that the lower courts erred by dismissing defendant's application for leave to appeal because defendant's motion was based on a retroactive change in law that thus overcame the procedural bar in MCR 6.502(G). *Poole*, 510 Mich at 851. We heard *Parks* on the same day. In that case,

2

we held that federal precedent concerning the Eighth Amendment's prohibition against "cruel and unusual punishments" did not support extending *Miller*'s protections to 18-year-olds. *Parks*, 510 Mich at 245, 247. However, we held that our state Constitution's broader prohibition against "cruel or unusual punishment" under Const 1963, art 1, § 16 did support such an extension. *Id*. at 247, 268. Following *Parks*, we remanded defendant's case to the Court of Appeals for that Court to determine whether defendant was entitled to relief under MCR 6.508(D), asking whether *Parks* applied to defendant's case. *Poole*, 510 Mich at 851-852.

On remand, the Court of Appeals held that *Parks* applied retroactively under a state retroactivity analysis and that the holding in *Parks* was substantive because it affected "substantive rights of a fundamental nature . . . ." *People v Poole*, ___ Mich App ___, ___; ___ NW3d ___ (January 18, 2024) (Docket No. 352569); slip op at 10-13 (quotation marks and citation omitted). The Court of Appeals thus vacated defendant's sentence and remanded for proceedings consistent with MCL 769.25.[1] *Id*. at ___; slip op at 13. The prosecution sought leave to appeal in this Court, arguing that the Court of Appeals erred

---

[1] "Post-*Miller*, and in anticipation of *Montgomery*, Michigan's Legislature established juvenile resentencing procedures that are consistent with these cases. MCL 769.25a; MCL 769.25." *Parks*, 510 Mich at 240. In *Parks*, we held that defendants who had been subject to mandatory life-without-parole sentences for first-degree murder offenses that were committed when they were 18 years old were entitled to the protections of MCL 769.25. *Id*. at 268. But *Parks* involved a case that was still on direct appellate review, such that a discussion of retroactivity was not required. Although the Court of Appeals here remanded for proceedings consistent with MCL 769.25, because defendant's case is no longer on direct appellate review, we find that MCL 769.25a is instead the better analogue here, given that MCL 769.25a governs resentencing procedures for those individuals to whom *Miller* was applied retroactively via *Montgomery*.

3

by concluding that *Parks* applies retroactively, and we granted the application. *People v Poole*, 513 Mich 1144 (2024).

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's denial of a motion for relief from judgment. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018).  "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

"The retroactivity of a court's ruling presents an issue of law that this Court reviews de novo." *People v Maxson*, 482 Mich 385, 387; 759 NW2d 817 (2008).

### B.  GENERAL RETROACTIVITY PRINCIPLES

In *People v Hampton*, 384 Mich 669; 187 NW2d 404 (1971), this Court relied on the United States Supreme Court's holding in *Linkletter v Walker*, 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965), to formulate a standard for determining whether an opinion should be applied retroactively.  This Court articulated the standard as follows:

> The United States Supreme Court has discussed various factors to be used in determining whether a law should be applied retroactively or prospectively.  There are three key factors which the court has taken into account: (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice. [*Hampton*, 384 Mich at 674.]

In *People v Gay*, 407 Mich 681, 705; 289 NW2d 651 (1980), this Court noted that the *Linkletter-Hampton* factors were appropriately considered when determining whether

4

a holding in a criminal case should be applied retroactively. However, this Court noted a significant limitation to the use of these factors:

> When considering procedural rules governing trial conduct, the *Linkletter-Hampton* criteria play a predominant role. However, when non-procedural or substantive rights of a fundamental nature are affected, they are normally to be accorded retrospective application. The *Linkletter-Hampton* considerations may be addressed, but only in the rare instance will they have determinative effect. [*Gay*, 407 Mich at 706.]

Thus, the importance of the *Linkletter-Hampton* factors is greatly circumscribed when substantive rules or rights are implicated in a holding, and retrospective application is favored.

In *Teague v Lane*, 489 US 288, 302-303; 109 S Ct 1060; 103 L Ed 2d 334 (1989), the United States Supreme Court departed from the use of the *Linkletter* test, noting that it had been subject to much criticism. Justice O'Connor's plurality opinion set forth a general rule of nonretroactivity for cases on collateral review: "Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."[2] *Id*. at 310. See also *Montgomery*, 577 US at 198 (explaining the Supreme Court's retroactivity approach in light of *Teague*). Notably, the United States Supreme Court has explained that state courts are not required to adopt *Teague*'s retroactivity framework for state

---

[2] These two exceptions concern rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" and rules that require "the observance of those procedures that are implicit in the concept of ordered liberty." *Teague*, 489 US at 307 (quotation marks, citations, and ellipsis omitted).

5

retroactivity purposes. *Danforth v Minnesota*, 552 US 264, 280-281; 128 S Ct 1029; 169 L Ed 2d 859 (2008).

Accordingly, that the United States Supreme Court has abandoned the *Linkletter* test for federal retroactivity purposes says nothing about how Michigan courts continue to assess retroactivity in the state context, given that this Court adopted the *Linkletter* test to serve as its own retroactivity standard in *Hampton*. Since *Teague*, Michigan courts have continued to apply the *Linkletter-Hampton* factors to determine whether a new rule of criminal law applies retroactively to final judgments on collateral review.[3] See *Schafer v Kent Co*, ___ Mich ___, ____; ___ NW3d ___ (July 29, 2024) (Docket No. 164975); slip op at 19 n 60.

### C. MANDATORY LIFE WITHOUT PAROLE

In *Miller*, the United States Supreme Court addressed whether a mandatory sentence of life without parole for a juvenile convicted of a homicide offense violated the Eighth Amendment's prohibition against cruel and unusual punishment. Relying on caselaw and scientific research addressing the diminished culpability of juveniles, the Supreme Court held that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 567 US at 489. Mandatory life-without-parole sentences for juveniles were thus found to be unconstitutional.

After *Miller* was decided, this Court considered whether *Miller* should be applied retroactively under either the federal or state tests for retroactivity in a set of consolidated

---

[3] We reject the prosecution's invitation to abandon the *Linkletter-Hampton* factors.

6

cases involving three separate defendants. *People v Carp*, 496 Mich 440; 852 NW2d 801 (2014). As to the federal test, this Court first determined that the *Miller* rule was a procedural rule that did not satisfy either of the *Teague* exceptions. *Id*. at 495. Having determined that *Miller* did not apply retroactively under the federal test, this Court then examined whether retroactive application was nonetheless appropriate under the state test, noting that "*Teague* provides a floor for when a new rule of criminal procedure must be applied retroactively, with a state nonetheless free to adopt its own broader test for requiring the retroactive application of a new federal or state constitutional rule." *Id*. at 496. Without citing *Gay*, this Court directly proceeded to apply the *Linkletter-Hampton* factors.

Under the first factor, which considers the purpose of the new rule, this Court held that

> when a new rule "concerns the ascertainment of *guilt* or *innocence*, retroactive application may be appropriate." [*People v Young*, 410 Mich 363, 367; 301 NW2d 803 (1981)], citing *Hampton*, 384 Mich 689 (emphasis added). Conversely, "[w]hen the ascertainment of guilt or innocence is not at stake, prospective application is possible" because "the purposes of the rule can be effectuated by prospective application." *People v Markham*, 397 Mich 530, 535; 245 NW2d 41 (1976). Consistent with this standard for when a rule should be applied only prospectively, "a new rule of procedure . . . which does not affect the integrity of the fact-finding process should be given [only] prospective effect." *Young*, 410 Mich at 367. [*Carp*, 496 Mich at 497-498.]

Although the defendant argued that sentencing concerns the "integrity of the fact-finding process," this Court rejected the argument, noting that "[i]n every case to date in which this Court has applied the state retroactivity test, the 'integrity of the fact-finding process' has always been referred to in the context of determining a defendant's 'guilt or innocence.' "

7

*Carp*, 496 Mich at 499, quoting *Maxson*, 482 Mich at 393-394, which in turn quoted *People v Sexton*, 458 Mich 43, 62; 580 NW2d 404 (1998), quoting *Young*, 410 Mich at 367. This Court thus held that the first factor did not favor retroactivity, stating that "the general principle of nonretroactivity for new rules of criminal procedure, to which Michigan adheres and which informs this state's retroactivity analysis, is properly served, in our judgment, by applying retroactively only those new rules of procedure that implicate the guilt or innocence of a defendant." *Carp*, 496 Mich at 500.

Having held that the first factor counseled against the retroactive application of *Miller*, this Court reasoned that the first factor is to be afforded greater weight when compared to the second and third factors. *Id*. at 502.

> In light of the weight to be afforded the first factor when it clearly preponderates against retroactive application, our unified consideration of the second and third factors would need to favor retroactive application to a substantial degree in order for *Miller* to satisfy the requirements for retroactive application under our state test. [*Id*. at 503.]

This Court noted that the second factor must be considered both from the perspective of the prosecutors who had acted in good-faith reliance on the old rule as well as the affected class of defendants. This Court held that the state prosecutors had relied upon the old rule and that it would be greatly burdensome to comply with the new rule and that this also reflected upon our consideration of the third factor, as it would mirror the burden placed on the administration of justice. Thus, this Court determined that the prosecutors had acted in significant and justified reliance upon the old rule and that the class of defendants had not relied on the old rule to *any* detriment. *Id*. at 506-509. Accordingly, this Court found

8

that *Miller* was also not entitled to retroactive application under the state test for retroactivity. *Id*. at 511-512.

Significantly, two of the defendants in the consolidated *Carp* cases filed petitions for certiorari with the United States Supreme Court. While those petitions were pending, the Supreme Court issued *Montgomery*, where it relied on *Teague* to determine that *Miller* is a substantive rule that applies retroactively:

> Because *Miller* determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption, it rendered life without parole an unconstitutional penalty for a class of defendants because of their status—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. As a result, *Miller* announced a substantive rule of constitutional law. Like other substantive rules, *Miller* is retroactive because it necessarily carries a significant risk that a defendant—here, the vast majority of juvenile offenders—faces a punishment that the law cannot impose on him. [*Montgomery*, 577 US at 208-209 (quotation marks, citations, and brackets omitted).]

After *Montgomery* was decided, the United States Supreme Court granted certiorari in these cases, vacated the judgments, and remanded the cases to this Court for further consideration in light of *Montgomery*. *Carp v Michigan*, 577 US 1186 (2016); *Davis v Michigan*, 577 US 1186 (2016). We then issued orders in those cases reversing the lower court opinions, vacating the defendants' sentences, and remanding to the trial courts for resentencing pursuant to MCL 769.25 and MCL 769.25a. *People v Carp*, 499 Mich 903 (2016); *People v Davis*, 499 Mich 903 (2016). Leave to appeal was denied in all other respects. *Carp*, 499 Mich at 903; *Davis*, 499 Mich at 904.

9

III. APPLICATION

A. PROCEDURE VERSUS SUBSTANCE

This case involves the application of a holding grounded in our state Constitution. *Parks*, 510 Mich at 268. Accordingly, the retroactivity analysis outlined in *Gay* controls: substantive rules should normally be given retroactive application. *Gay*, 407 Mich at 706. Under *Gay*, the initial question is whether the *Parks* holding was merely procedural, or whether it concerned substantive rights of a fundamental nature. We find the United States Supreme Court's discussion of this distinction helpful here:

> Substantive rules . . . set forth categorical constitutional guarantees that place certain criminal laws and punishment altogether beyond the State's power to impose. It follows that when a State enforces a proscription or penalty barred by the Constitution, the resulting conviction or sentence is, by definition, unlawful. Procedural rules, in contrast, are designed to enhance the accuracy of a conviction or sentence by regulating the *manner of determining* the defendant's culpability. [*Montgomery*, 577 US at 201 (quotation marks and citations omitted).]

In *Montgomery*, the United States Supreme Court applied this standard and held that "*Miller* announced a substantive rule that is retroactive in cases on collateral review." *Id*. at 206. Although not binding on this Court, we find the *Montgomery* analysis to be persuasive in this case, given that our holding in *Parks* was an extension of *Miller*, albeit grounded in our state's "cruel or unusual punishment" provision in Const 1963, art 1, § 16. We therefore conclude that the *Parks* holding was substantive because, like *Miller*, it "necessarily carries a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him." *Montgomery*, 577 US at 208-209 (quotation marks, citations, and brackets omitted).

10

Our holding in this case is consistent with this Court's practice of providing relief to everyone serving a sentence that has later been found to be invalidated. See *People v Jahner*, 433 Mich 490, 504; 446 NW2d 151 (1989); *People v Bullock*, 440 Mich 15, 42; 485 NW2d 866 (1992) ("Finally, our decision today necessarily invalidates the sentences of all defendants currently incarcerated under the same penalty, and for committing the same offense, as the defendants at bar."). Because the *Parks* rule is substantive, this Court must apply it retroactively "to assure the fair distribution of a fundamental right." *Gay*, 407 Mich at 709.

## B. *LINKLETTER-HAMPTON* FACTORS

Although *Gay* noted that a substantive rule is typically accorded retroactive application, it also acknowledged that the *Linkletter-Hampton* factors continue to have limited utility, given that they may have a determinative effect in the rare case. *Gay*, 407 Mich at 706. In other words, a substantive rule might not be applied retroactively if the *Linkletter-Hampton* factors strongly indicate otherwise.

An examination of the *Linkletter-Hampton* factors is thus necessary to confirm whether *Parks* should have retroactive application. Because *Parks* itself was an extension of *Miller*, our first point of reference in addressing the *Linkletter-Hampton* factors here must be *Carp*, which held that the factors did not warrant a retroactive application of *Miller*. *Carp*, 496 Mich at 511-512. Although the *federal* retroactivity analysis of *Carp* was vacated by *Montgomery*, see *Carp*, 577 US 1186; *Davis*, 577 US 1186, the parties in the instant case vigorously dispute the impact that the orders from both the United States Supreme Court and this Court had on the *state* retroactivity analysis of *Carp*. Because

*Teague* provided the floor for constitutional purposes, the United States Supreme Court's conclusion in *Montgomery* necessitated reversals in the consolidated *Carp* cases, notwithstanding this Court's state retroactivity analysis to the contrary. Although *Montgomery* did not directly affect this Court's state retroactivity analysis in *Carp*, it rendered this portion of the holding toothless because it could not be *more* limited than the result obtained under the broader federal test. See *Danforth*, 552 US at 289.

Given its potential application here, we must first consider what value this portion of the *Carp* holding continues to have. For the sake of simplicity, to the extent that the state retroactivity analysis of *Carp* survived *Montgomery*, we now explicitly overrule it.

In examining the first *Linkletter-Hampton* factor, *Carp* held that only new rules of procedure that implicate the guilt or innocence of a defendant are entitled to retroactive application. *Carp*, 496 Mich at 500. Setting aside our contrary determination under *Gay* that *Parks*, like *Miller*, is a substantive rule and not a procedural one, we find this holding untenable for a number of reasons. First, even if the first factor is properly accorded the most weight, it is unclear what use the other two factors of the *Linkletter-Hampton* test ever have if the first factor already winnows down the potential universe of retroactive application to this narrow category of procedural rules. In other words, under this reading of the first factor, we question why a three-factor test is at all necessary. Second, and more importantly, we question the basis for this Court's holding that the first factor is thus limited.

In *Carp*, this Court suggested that *all* prior applications of the *Linkletter-Hampton* test have referred to the integrity of the fact-finding process in the context of determining guilt or innocence. *Id*. at 499. In support of this proposition, the Court cited five cases:

*Maxson*, *Sexton*, *Young*, *Markham*, and *Hampton*. However, *Maxson* merely quoted *Sexton* without adding any independent analysis, *Maxson*, 482 Mich at 393-394, while *Sexton* itself quoted *Young* without adding any additional analysis, *Sexton*, 458 Mich at 62-63. *Young* also did not include any independent analysis, and instead of quoting relevant language from *Hampton*, *Young* only refers to *Hampton* generally in support of this proposition. *Young*, 410 Mich at 367. The same is true of *Markham*, which at least gives a pincite for *Hampton*. *Markham*, 397 Mich at 534-535.

It is thus clear that the only support for this understanding of the first *Linkletter-Hampton* factor derives from *Hampton* itself, where this Court adopted the *Linkletter* framework. Crucially, however, *Hampton* does not stand for the proposition that the *Carp* Court ascribed to it. In reading *Hampton*, it is clear that this Court was merely surveying relevant decisions from the United States Supreme Court to determine whether that Court had established a pattern regarding when retroactive application may be appropriate. *Hampton*, 384 Mich at 676-677. In surveying these cases, this Court noted that the United States Supreme Court had applied decisions retroactively when the guilt or innocence of the defendant was at stake and had applied decisions prospectively when that was not the case. *Id*. However, this was merely a survey of then relevant Supreme Court caselaw in a case in which the defendant's guilt or innocence was clearly at issue.[4] When read in its appropriate context, *Hampton* does not and cannot stand for a definitive rule that the first *Linkletter-Hampton* factor favors retroactive application only when a rule concerns a

---

[4] *Montgomery* itself is an example of how United States Supreme Court retroactivity caselaw is not this easily defined, given that it does not involve a determination of a defendant's substantive guilt or innocence.

defendant's guilt or innocence.  To the extent that our prior caselaw has misread *Hampton* to state otherwise, it has done so largely without consideration of the appropriate nuances, and we disavow this characterization of *Hampton*.

When considered pursuant to a proper understanding of *Hampton*, it is clear that the purpose of *Miller* favored retroactive application.  See *Montgomery*, 577 US at 212.  The purpose of the *Miller* holding was to prevent juveniles from being barred from the possibility of rehabilitation by the imposition of a *mandatory* life-without-parole sentence. *Miller* stands for the proposition that it is the rare juvenile who will be found to be irredeemable and deserving of such a sentence, as the majority are better served by a term-of-years sentence.  See *id*. at 209.  Given that the purpose of *Miller* was to declare that a certain sentence was unconstitutional for an entire class, with rare exceptions where the burden of proof is on the prosecution to establish otherwise during individualized sentencing proceedings, it is clear that the *Carp* opinion incorrectly held that the first *Linkletter-Hampton* factor did not favor retroactive application.

In its discussion of the second and third factors, *Carp* focused on the impact on prosecutors who relied in good faith on the old rule.  *Carp*, 496 Mich at 503-504.  Although it is true that these mandatory sentences were previously considered constitutional, it is confusing for a court to rely on the good-faith reliance of individual prosecutors when considering the imposition of *mandatory* sentences of life without parole.  It was the Legislature, not the prosecutors, that mandated life without parole as a punishment for specific crimes.  To the extent that prosecutors had some effect on whether these defendants were subject to mandatory life without parole by exercising discretion in selecting the charges that were filed, *Miller* only concerns the imposition of the mandatory sentence

14

itself and not the conviction underlying the sentence. See *Montgomery*, 577 US at 212 ("Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions."). Thus, although prosecutors may have relied to some extent on the old rule, any such reliance is undermined by the fact that they never had to argue for life-without-parole sentences and the convictions that they worked to obtain remain undisturbed.

Instead, the focus should more appropriately be on the class of defendants who received mandatory life-without-parole sentences for homicide offenses committed when they were juveniles, but whose cases were already finished on direct review when *Miller* was decided. Reliance on pre-*Miller* caselaw is obviously detrimental to that group of defendants who would have received relief under *Miller* but for a quirk in timing.[5] Accordingly, the *Carp* opinion erred in its application of the second factor.

In examining the third factor, *Carp* correctly noted that there is a burden on the administration of justice to the extent that resentencing hearings require precious judicial resources. See *Carp*, 496 Mich at 504. We also recognize that such hearings can of course be extremely difficult for those affected by the underlying crimes. Although the *Carp* opinion did not err by determining that there was a burden on the administration of justice, this factor is outweighed by the consideration of the other two factors. More importantly, this burden is further outweighed by the conclusion that *Parks* is a substantive rule.

---

[5] To the extent that the *Carp* opinion held that this is not strictly "reliance" because these defendants did not rely on *Miller* before their sentences were validly imposed, that reasoning would again apply to the individual prosecutors who also could not be said to have relied on *Miller*, both because *Miller* had not been decided yet and because the sentences were mandated by the Legislature.

We thus hold that *Carp* erred in its analysis of the *Linkletter-Hampton* factors. However, that is only the first step of the stare decisis inquiry. See *Robinson v Detroit*, 462 Mich 439, 465; 613 NW2d 307 (2000). "[C]ourts should [also] review whether the decision defies practical workability, whether reliance interests would work an undue hardship were the decision to be overruled, and whether changes in the law or facts no longer justify the decision." *City of Coldwater v Consumers Energy Co*, 500 Mich 158, 173; 895 NW2d 154 (2017). Although the *Carp* holding does not defy practical workability, there has been no significant reliance on *Carp*, given that it was reversed on federal grounds in relatively short order, and *Montgomery* itself was a meaningful change in the law that entirely undermined *Carp*'s substantive holding. Accordingly, we find that our stare decisis doctrine does not prevent us from overruling that portion of *Carp* that addressed the state retroactivity test.

In sum, because our decision to overrule *Carp* already involved a substantive discussion of the *Linkletter-Hampton* factors, we now incorporate that analysis in holding that *Parks* applies retroactively. The first factor, concerning the purpose of the new rule, favors retroactive application of *Parks* because, like *Miller*, *Parks* declared mandatory life-without-parole sentences unconstitutional for an entire class. The second factor, concerning reliance, also favors retroactive application because reliance on pre-*Parks* caselaw is detrimental to that group of defendants who received mandatory life-without-parole sentences for crimes committed when they were 18 years old, but whose cases were already finished on direct review when *Parks* was decided. The third factor, concerning the administration of justice, does not favor retroactive application, given the use of judicial resources and the impact of resentencing hearings on those affected by the underlying

16

crimes.  However, on balance, the application of the *Linkletter-Hampton* factors reaffirms our conclusion that *Parks* is entitled to retroactive application as a substantive rule under *Gay*, 407 Mich at 706.

## IV.  CONCLUSION

We hold that the *Parks* holding is retroactive under a state retroactivity analysis. Under *Gay*, our primary focus concerns whether a past holding is procedural or substantive. We find that the *Montgomery* analysis, holding that *Miller* was a substantive rule, is persuasive, and that *Parks* also announced a substantive rule.  In addressing the *Linkletter-Hampton* factors to confirm that retroactive application is appropriate, we overrule *Carp*'s state retroactivity analysis, in particular the opinion's mistaken holding that the first factor focuses on whether a rule is concerned with a defendant's guilt or innocence.  Because our application of the *Linkletter-Hampton* factors confirms that retroactive application is warranted, we affirm the judgment of the Court of Appeals vacating defendant's sentence of mandatory life without the possibility of parole and remanding for further proceedings consistent with MCL 769.25a and this opinion.

Richard H. Bernstein
Elizabeth T. Clement
Brian K. Zahra
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

THOMAS, J., did not participate because of her prior involvement in this case.